# Richmond.

## T. A. CROOK, ET ALS. V. COMMONWEALTH.

### January 20, 1927.

1. SUNDAYS AND HOLIDAYS—*Professional Baseball—Professional Baseball Players Engaged in a Game on Sunday for which They Received no Extra Compensation and for which no Admission was Charged.*—Defendants, professional baseball players and umpires, under contract to umpire and play for professional baseball clubs during the season, at the request of their managers, engaged in a baseball game on Sunday for which they received no extra compensation and at which no charge was made for admission.

   *Held:* That a conviction of the players and umpires for violating section 4570 of the Code of 1919 should be sustained.

2. SUNDAYS AND HOLIDAYS—*"Labor"—"Calling"—"Trade."*—As used in the Sunday law, section 4570 of the Code of 1919, "labor" means physical or mental toil; bodily or intellectual exertion; "calling" means one's usual occupation, vocation or business; "trade" means any occupation or employment pursued as a calling; the business which a person has learned and which he engages in for procuring a subsistence, or profit, especially a mechanical employment.

3. SUNDAYS AND HOLIDAYS—*Professional Baseball.*—Professional baseball is a "trade" or "calling" within the purview of section 4570 of the Code of 1919, and where the players are paid regular salaries, the fact that they received no special compensation for engaging in an exhibition game on Sunday is immaterial.

4. SUNDAYS AND HOLIDAYS—*Unprofitable Work—Section 4570 of the Code of 1919.*—The Sunday law (section 4570 of the Code of 1919) was not intended to punish only those whose business is profitable, but all not excepted by the statute, who are found laboring at a trade or calling on Sunday. The object of the statute being to make Sunday a day of rest, a person who performs the same labor on Sunday which he performs in his regular trade or calling on the other days of the week, cannot escape the penalty of the statute by working, without compensation, and claiming that he was in fact playing and not working.

5. SUNDAYS AND HOLIDAYS—*Section 4570 of the Code of 1919—Sport.*—One who engages in a pure game of sport is not amenable to the Sunday

law, section 4570 of the Code of 1919. The amateur who plays baseball on Sunday is not laboring at his trade or calling within the meaning of the statute. Playing baseball is not his occupation or vocation. Unlike the professional player, whether he plays on Sunday or a week day, the amateur engages in the game as a sport and not for the purpose of procuring a livelihood.

6. SUNDAYS AND HOLIDAYS—*Works of Necessity or Charity—Professional Baseball—Questions for Jury—Case at Bar.*—In the instant case, the question, whether the playing of the game of professional baseball on Sunday, under the circumstances disclosed by the record, was a work of necessity or charity within the meaning of the statute was rightly submitted to the jury under proper instructions.

7. STATUTES—*Construction—Sunday Law—Judicial Notice of Attempted Amendment of Statute.*—Using the knowledge it has of political and legislative history in this State, the Supreme Court of Appeals will take judicial notice of the fact that a bill introduced into the Senate of Virginia, by the senator from Norfolk county, in 1926, amending section 4570 of the Code of 1919, by providing that it should not apply to athletic fields or outdoor sports open to the general public after the hour of two o'clock post meridian, failed of passage. This is an indication of the legislative policy in Virginia.

8. SUNDAYS AND HOLIDAYS—*Professional Baseball—Instructions—Case at Bar.*—In the instant case, a prosecution for violation of the Sunday law, the jury were instructed that if they believed beyond a reasonable doubt that the defendants were employed under contract by the Portsmouth Baseball Club or Richmond Club to play professional baseball for competition for the season beginning April 16th and ending September 12th, and said employment constituted their trade or calling, and that pursuant to or in consequence of said contract the said defendants engaged in a professional game of baseball on Sunday, May 17th, they must find them guilty unless they believe from the evidence that said game was of necessity or charity. The irresistible inference to be drawn from the evidence was that defendants participated in the Sunday game "in consequence of said contract," to-wit, their contract as baseball players and umpires and that they would not have consented to play but for their contract. *Held:* That there was no error in this instruction.

Error to a judgment of the Circuit Court of Norfolk county.

*Affirmed.*

The opinion states the case.

*T. E. Gilman, Jno. W. Harper,* and *Venable, Miller, Pilcher and Parsons,* for the plaintiffs in error.

*John R. Saunders, Attorney General,* and *Leon M. Bazile* and *Lewis H. Machen, Assistant Attorneys General,* for the Commonwealth.

WEST, J., delivered the opinion of the court.

The plaintiff in error, T. A. Crook, and nineteen other citizens, who will be hereafter referred to as defendants, were convicted of a violation of the Sunday law (Code of Virginia, section 4570), and sentenced to pay a fine of $5.00 each and costs. They were first convicted by a justice of the peace under a warrant issued by him. Upon an appeal to the circuit court, the jury found them guilty and fixed their punishment at a fine of $5.00 each, upon which the judgment under review was entered.

[1] The defendants, T. A. Crook and Edward Brandon, were professional umpires of baseball games for the Virginia League. The remaining eighteen defendants were professional baseball players of the Richmond and Portsmouth (Va.) Baseball Clubs, which belong to the Virginia League. Each of the umpires and each of the players was under a contract with the Virginia League, to umpire and play, respectively, for the playing season, from April 16, 1925, to September 12, 1925. For their services, each received an agreed monthly salary. There was nothing in the contract which required them to play on Sunday; nor did the league's regular schedule of games in Virginia provide for any game on Sunday. The regulations which are made a part of the contract contain the following provisions: "The player shall not without the consent of his club engage during the term of this contract or any renewal thereof in any game or exhibition of baseball, except for the club or for an

assignee of this contract." The contract further provides for the imposition of fines for the violation of any regulation by the player, which may be deducted from his salary.

On Sunday, May 17, 1925, at the request of Frank D. Lawrence, president of the corporation operating the Portsmouth Club, the defendants engaged in a game of baseball on the field of the Portsmouth Club, in Norfolk county. No admission fee was charged and 5,000 people were present to see the game. From 300 to 700 people usually attend the game when played on a week day.

At the expiration of their contracts with the league, the defendants follow the trades or callings from which they came to the league, until the time comes to renew their contracts.

At the ending of the first inning the officers stopped the game and arrested the players and the umpires, who were tried, convicted and sentenced, as above stated.

Section 4570, so far as involved here, reads as follows: "If a person on a Sunday be found laboring at any trade or calling, or employ his apprentices or servants in labor or other business, except in household or other work of necessity or charity, he shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than five dollars for each offense."

This section of the Code was considered by the court in the recent cases of *Lakeside Inn Corp.* v. *Commonwealth*, 134 Va. 669, 114 S. E. 769, and *Perkey Brothers* v. *Commonwealth*, 134 Va. 713, 114 S. E. 764, 299 L. R. 1290. In the latter case, the very able and illuminating opinion by Judge Burks expresses fully our views on the questions of Sunday observance, religious liberty, a Christian state, the constitutionality and the

construction of the statute as applied to the facts in that case.  At page 722 (114 S. E. 766), he says  "While the provision of the statute, therefore, cannot be enforced as a religious observance, the great moral force that is back of it will make itself felt in its enforcement in conformity with the views of that force."   Referring more specifically to a proper construction of the statute, at page 726 (114 S. E. 768), he speaks thus:

"*   *   *   The statute should have a reasonable construction so as to promote the end for which it was enacted, and thus cover every class of labor at every trade, calling or other business not excepted by the statute. The statute should also be construed in the light of the age in which we live, recognizing the fact that there are things which the community regard as necessary that were not necessities when the statute was first enacted; that to escape the penalty pronounced by the statute, the labor performed must be of the class excepted by the statute, or recognized by the community as a necessity, and that what is or is not a necessity is generally a question of fact for the jury and not one of law for the court.   There are cases where the question is one of law for the court.   Where the act done is plainly a violation of the statute, as where a contractor, without emergency, is running a steam shovel on Sunday, or the act is plainly one of necessity, as where the owner lifts his ox out of the ditch; in either case, the question is one of law for the court.   But if the act be one about which fair-minded men might reasonably differ as to whether or not it is a work of necessity, then it is a question of fact for the jury.   *   *"

At page 725 (114 S. E. 767), he uses this language: "Its aim is to prevent the physical and moral debility which springs from uninterrupted labor, and in this respect it is a beneficent and merciful law.   It gives

one day to the poor and dependent from the employment of which no capital or power is permitted to deprive them.    It is theirs for repose, for social intercourse, for moral culture, and, if they choose, for divine worship."

[2] Mr. Webster's New International Dictionary defines *labor, calling* and *trade* as follows:    Labor.    "Physical or mental toil; bodily or intellectual exertion." Calling.    "One's usual occupation, vocation, business." Trade.    "Any occupation or employment pursued as a calling.    The business which a person has learned and which he engages in for procuring a subsistence, or profit, especially a mechanical employment."

In *State* v. *Worth*, 116 N. C. 1011, 21 S. E. 204, the court in construing a statute providing for a tax on trades, professions, etc., held that the word "trade" meant, "any employment or business embarked in for gain."

In *Shryock & Rowland* v. *Latimer*, 57 Tex. 677, the court held that the words, "calling" and "business," as used in the Constitution, taken together, "embrace every legitimate avocation in life by which an honest support    *    *    *    may be obtained."

Giving to the words used their proper meaning, it is manifest that the object of the statute was to make Sunday a day of rest, and, to that end, it inhibits every kind of labor, mental or physical, in any trade, calling or other business, except in household or other work of necessity or charity.    One man can be "found laboring" at his desk, in violation of the statute, just as surely as another can be "found laboring" upon his farm.    Mental work is often more injurious to a man's physical nature than manual labor.

[3] Professional baseball is a trade or calling within the purview of the statute.    Professional players and

umpires are trained for their work and frequently receive attractive salaries.   Defendants were engaged in professional baseball for a livelihood and for profit, and were paid salaries by the league which exceeded those paid them in other vocations.   Their contracts required that they be paid for their services monthly. The fact that they received no special compensation for engaging in the exhibition game on Sunday is immaterial.

[4, 5] The statute was not intended to punish only those whose business is profitable, but all, not excepted by the statute, who are found laboring at a trade or calling on Sunday.   The object of the statute being to make Sunday a day of rest, a person who performs the same labor on Sunday which he performs in his regular trade or calling on the other days of the week, cannot escape the penalty of the statute by working without compensation, and claiming that he was in fact playing and not working.   While the defendants received no additional compensation for playing on Sunday, it is manifest that their services would inure greatly to the benefit of their employer.   The Sunday game being more largely patronized, tended to stimulate the interest of the public in professional baseball and thereby increase the gate receipts when the game was played on week days.   We do not hold that one who engages in a pure game of sport is amenable to the statute. The amateur who plays baseball on Sunday is not laboring at his trade or calling within the meaning of the statute.   Playing baseball is not his occupation or vocation.   Unlike the professional player, whether he plays on Sunday or a week day, the amateur engages in the game as a sport and not for the purpose of procuring a livelihood.

The farm employee who, having contracted to plow

corn for $40 per month, plows corn on Sunday without extra pay, is laboring at his calling. The shoe repairer who repairs shoes on Sunday, free of charge, is working at his trade just as surely as he is on Monday when he charges for his work. The merchant who sells his merchandise on Sunday at cost is laboring at his calling as certainly as he is on Monday when he charges a profit on the cost price of the goods sold. Likewise, the defendants, when they engaged in a game of professional baseball on Sunday, at the request of an official of the club, without additional compensation, were laboring at their trade or calling.

[6] The question, whether the playing of the game of professional baseball on Sunday, under the circumstances disclosed by the record, was a work of necessity or charity within the meaning of the statute was rightly submitted to the jury under proper instructions, and has been answered in the negative.

The cases relied on by the defendants are not controlling here.

In *State* v. *Nashville Baseball Association*, 141 Tenn. 456, 211 S. W. 357, 4 A. L. R. 368, the court held that playing professional baseball on Sunday is not a violation of the Tennessee statute, which reads: "If any merchant, artificer, tradesman, farmer, or other person, shall be guilty of doing or exercising any of the common avocations of life, or causing or permitting the same to be done by his children or servants, acts of real necessity or charity excepted, on Sunday, he shall, on due conviction  *   *   forfeit and pay three dollars *   * "

This statute was enacted in 1803. Baseball was originated in 1839, and professional baseball clubs were first organized in 1868. The court based its decision on the ground that the legislation could not, at the time

of the passage of the law, have intended to apply to a game not then in existence.  The court gave, as a further reason for its decision, the fact that several attempts had been made, without success, to get the legislature to enact a law prohibiting the playing of baseball on Sunday.

The rulings of the courts, favorable to professional baseball, in *Ex parte Neet*, 157 Mo. 527, 57 S. W. 1025, 80 A. S. R. 638, and *State* v. *Prather*, 79 Kan. 513, 100 Pac. 57, are based on practically the same reasoning.

The Virginia Sunday law was first enacted in 1779. This court held, in *Wells* v. *Commonwealth*, 107 Va. 834, 57 S. E. 585, and *Hanger* v. *Commonwealth*, 107 Va. 872, 60 S. E. 67, that a violation of the law was not a misdemeanor, and that the forfeiture prescribed could be recovered only by a civil warrant.   In 1908, long after professional baseball was well known and played in Virginia, the legislature amended the law thereby making it a misdemeanor for any person to labor at any trade or calling on Sunday.

[7] Using the knowledge it has of political and legislative history in this State, this court will take judicial notice of the fact that a bill introduced into the Senate of Virginia, by the senator from Norfolk county, in 1926, amending section 4570 of the Code by providing that it should not apply to   "* * athletic fields or outdoor sports open to the general public after the hour of two o'clock post meridian," failed of passage.   This is an indication of the legislative policy in Virginia.

The defendants' contention that the court should have sustained their demurrer to the warrants and dismissed the same on the ground that playing baseball, under the circumstances disclosed by the record, was not laboring within the purview of the statute, is without merit.

The defendants also assign as error the action of the court in giving instruction "A" of its own motion and in giving instruction No. 5, as amended.

The following are all the instructions given by the court, Nos. 2, 6, 7, 9, 10, 11, 12 and 13, being given on motion of the defendants:

"A. If the jury believe from the evidence beyond a reasonable doubt that the defendants were employed under contract by the Portsmouth Baseball Club or Richmond Club to play professional baseball for competition for the season beginning April 16th, and ending September 12th, and said employment constituted their trade or calling, and that pursuant to or in consequence of said contract the said defendants engaged in a professional game of baseball on Sunday, May 17th, they must find them guilty unless they believe from the evidence that said game was of necessity or charity."

2. "The court instructs the jury that the Sunday labor statute is a penal statute and is to be construed strictly, and not to extend beyond the plain letter of the law."

5 (as amended). "The court further instructs the jury that even if you do find that the playing of baseball is laboring at a calling, you must further find beyond a reasonable doubt that it is not a work of necessity, or you must find the defendants not guilty."

6. "The court instructs the jury that the burden of proof is on the Commonwealth to establish beyond a reasonable doubt that the defendants worked or labored at a trade or calling on the Sabbath day, and that such labor was not a work of necessity or charity."

7. "The court instructs the jury that if they find from the evidence that it is a public necessity within the meaning of the statute that there be playing of professional baseball on Sunday afternoon, then the fact that

incidentally certain persons are laboring for the purpose of umpiring does not constitute an offense within the statute.''

9. ''The court instructs the jury that the question that whether the playing of professional baseball on Sunday afternoon was labor at a calling, and if labor, whether or not a work of necessity within the meaning of the statute, is a question for the jury, and that, in determining this fact, they may consider the manner in which the park and the premises were run, the effect that the opening of the park, the playing of professional baseball, has on the good order and moral welfare of the community, and whether or not playing of professional baseball on Sunday is for the orderly and moral recreation of the public.''

10. ''The court instructs the jury that the purpose of the law in prohibiting work from being done on Sunday is to give the public a rest from its customary labor, for the benefit of both the moral and physical nature of mankind, and not for the purpose of enforcing the beliefs or tenets of any religious creed or denomination.''

11. ''The court instructs the jury that a work of necessity, as meant by the statute of Virginia, is not a physical and absolute necessity, but a moral fitness or propriety of the work or labor or act done under the circumstances of each case.''

12. ''The court instructs the jury that if upon the whole evidence in the case, both for the Commonwealth and the accused, the jury, after a careful and deliberate consideration of the evidence and the arguments of counsel and a full and free conference among themselves, entertain a reasonable doubt as to the guilt of the accused, they cannot be rightly convicted and you must find them not guilty.''

13. ''The court instructs the jury that unless you

believe beyond a reasonable doubt that these defendants were laboring at a trade or calling within the meaning of the statute in playing baseball, then you must find them not guilty."

A careful consideration of these instructions fails to disclose any error. They fully informed the jury as to the law applicable to the case and are as favorable to the defendants as they could reasonably expect. They left to the jury every issue of fact raised by the evidence, and their findings thereon are conclusive in this court.

[8] Referring to instruction "A," it will be observed that the irresistible inference to be drawn from the evidence is that the defendants participated in the Sunday game, "in consequence of said contract," to-wit, their contract with the league. It may be true that they were not compelled by the president of the club to play, but he would not have invited them and they would not have consented to play, but for the existence of the contract.

Defendants complain of the court's refusal to give instructions 1, 3, 4, 8 and 5 as offered by them. Several of these instructions do not correctly state the law; and inasmuch as the jury was otherwise fully and properly instructed, the action of the court on these instructions was immaterial and without prejudice to the defendants.

The remaining assignment of error relates to the court's refusal to set aside the verdict of the jury on the ground that it is contrary to the law and the evidence.

We have discussed the evidence and the law and feel that a further recital of the evidence is unnecessary. It is sufficient to say that the record discloses ample

evidence to support the verdict of the jury, and that it is in accordance with the law.

Our conclusion is to affirm the judgment.

*Affirmed.*

BURKS and CHICHESTER, JJ., dissenting:

We cannot concur in the conclusion reached by the majority of the court in this case.

We do not doubt but that section 4570 of the Code makes the playing of professional baseball on Sunday in Virginia, a misdemeanor, but we do not think the defendants in this case were playing professional baseball and were thus laboring at their calling, as contemplated by the statute. Baseball becomes a trade or calling only when it is played for a consideration. The parties found guilty in this proceeding were professional baseball players and baseball was their calling or business because they were under contract to play for a consideration. On the other hand baseball is not *per se* a business, indulging in which is denounced by the statute. It is a sport in which anyone can indulge on Sunday, *as a sport*, if he sees fit. In this it is, as are other sports, distinguished from the ordinary trades or callings laboring at which on Sunday is denounced by the statute.

No one will deny the fact that a professional baseball player can play baseball for sport on Sunday as well as any other person, without violating the statute.

The question therefore is were these accused parties laboring at their trade, or playing for sport, on the Sunday in question.

It seems to us that the answer to this question is

found in the fact that they were not, so far as the record shows, playing under their contract of employment, but were volunteers, playing, it is true, at the request of their managers, but playing without compulsion and without remuneration.

They were engaged in an exhibition game for which no admission fee was charged, no seats were sold and no contribution invited, and they could have refused to play without violation of their contracts.

Under such circumstances we think they were engaged in sport in which they had a perfect right to indulge.

Something is made of the fact that their contract prohibited them from playing exhibition games except for the club to which they belonged, but it does not follow from this that they were under contract to play exhibition games for their club at all.

This provision of the contract was to prevent the danger of injury to the players except in the service of the club and to prevent other organizations from getting the benefit of their services.

We conclude, therefore, that while the statute prohibits laboring at any trade or calling including the calling or business of baseball when it is professionalized and comes within the definition of a trade or calling as set out in the opinion, these defendants were not, at the time of their arrest, so far as the agreed facts of this case show, laboring at their calling, but were indulging in a game of sport in which they and all other persons had a right to engage on Sunday.

The question of Sunday sports and diversions should be left to the legislature to determine in unequivocal language, and within constitutional limitations, what may or may not be done on Sunday.

This being their status, and the statute not applying

to sports the judgment of the trial court should be reversed.     But even if there is only a doubt as to the application of the statute to the case under review the result would be the same.

In *Sutherland* v. *Commonwealth*, 109 Va. 834, 835, 65 S. E. 15, 23 L. R. A. (N. S.) 172, 132 Am. St. Rep. 949, it is said to be a fundamental rule of construction that all penal statutes "must be construed strictly against the State and favorably to the liberty of the citizen. The maxim is founded on the tenderness of the law for the rights of individuals, and on the plain principle that the power of punishment is vested in the legislature and not in the judicial department.     No man incurs a penalty unless the act which subjects him to it is clearly within the spirit and letter of the statute which imposes such penalty.     There can be no constructive offenses, and before a man can be punished his case must be plainly and unmistakably within the statute.     If these principles are violated, the fate of the accused is determined by the arbitrary discretion of the judges, and not by the express authority of the law."     This is expressly approved in *Jordan* v. *South Boston*, 138 Va. 838, 847, 122 S. E. 265, and in *Enoch* v. *Comth.*, 141 Va. 411, 435, 126 S. E. 22.

In *McKay* v. *Comth.*, 137 Va. 826, 830, 120 S. E. 138, 139, it is said:     "A penal statute cannot be extended by implication or construction.     It cannot be made to embrace cases not within the letter though within the reason and policy of the law.     To constitute the offense the act must be both within the letter and spirit of the statute defining it.     Those who contend that a penalty is imposed must show that the words of the act distinctly cover the case.     No conviction can be had if the words are merely equally capable of a construction that would, and one that would not, inflict

the penalty.    If a penal statute be so ambiguous as to leave reasonable doubt of its meaning, it is the duty of the court to refuse to impose the penalty."

We are unable to say that the plaintiffs in error are "plainly and unmistakably within the statute," or that there is no "reasonable doubt of its meaning," and hence feel constrained to dissent from the opinion of the court.