Syllabus.

# Richmond.

## Lakeside Inn Corporation v. Commonwealth.

### November 16, 1922.

1. Judicial Notice—*Judicial Notice that a Certain Date Fell on Sunday.*—The court will take judicial notice of the fact that January 8, 1922, fell on Sunday.

2. Exceptions, Bill of—*Time of Signing—Sixtieth Day after Judgment Falling on Sunday—Case at Bar.*—In the instant case final judgment was entered against the plaintiff in error on November 10, 1921, but the bills of exception were not signed until January 9, 1922. January 8, 1922, fell on Sunday.

   *Held:* That the writ of error would not be dismissed on the ground that the bills of exception were not filed within sixty days after judgment.

3. Time—*Computation of Time—Last Day Falling on Sunday—Sunday Dies Non Juridicus.*—Independent of any statutory rule on the subject, when a statute prescribes a certain number of days within which an act is to be done, and says nothing about Sunday, it is to be included, unless the last day falls on Sunday, in which case the act may generally be done on the succeeding day. Sunday is usually *dies non juridicus* and judicial acts performed on that day are void. If the act to be done is authorized to be done on Sunday, then Sunday is to be counted although the last day be Sunday.

4. Sunday—*Necessity—Labor Entailed by Necessity.*—If what is done by one is justified under the Sunday law as a necessity and therefore excepted from the operation of that law, then the labor which is thereby entailed on another as a necessary incident is likewise justified. Hence it is only necessary to inquire as to the necessity of the act entailing the consequent labor, for without the labor the act could not be done.

5. Sunday—*Necessity—Physical Necessity or Moral Fitness or Propriety—Necessity Question for Jury.*—The necessity meant by the Sunday law and which is excepted from that law is not a physical necessity, but a moral fitness or propriety of the work and labor done under the circumstances of the particular case, and whether or not the act in question is morally fit and proper is usually a question of fact to be determined by a jury after hearing the testimony relevant to that particular act, and receiving proper instructions from the court, upon

request, as to the proper interpretation of "necessity" as used in the statute.

6. SUNDAY—*Necessity—Question for Jury—Evidence—Opinion Evidence.*— The jury cannot discharge its function in determining whether a particular act is one of necessity, unless it is permitted to hear all the pertinent and relevant testimony offered on the subject. This does not mean that the opinions of persons living in the community are relevant to, and admissible upon, the question of the moral fitness and propriety of the act in question. Usually, they are not. Opinion evidence is only admissible where it would be helpful to the jury. If the jurors are as capable of forming their own opinions upon given data as the witness whose opinion is offered in evidence, then the opinion is not admissible.

7. EXPERT AND OPINION EVIDENCE—*Admissibility of Expert Evidence.*—In a proper case the law requisitions the expert in every field of human knowledge to assist in arriving at just conclusions.

8. SUNDAY—*Keeping Open Swimming Pool on Sunday—Evidence of Sheriff and Deputy Sheriff as to Conditions before Swimming Pool was Opened— Case at Bar.*—In a prosecution for keeping open a swimming pool on Sunday, the testimony of the sheriff and deputy sheriff of the county showing that for a long period of time prior to the opening of the pool, persons living in the vicinity had been shocked by a great number of nude men and boys and partially nude women who could be seen on Sundays bathing or dressing and undressing along the streams, and that the sheriff had been called on to make numerous arrests, and that by the opening of the pool this nuisance had been practically eliminated, was admissible.

9. SUNDAY—*Keeping Open Swimming Pool on Sunday—Evidence as to Sanitary Condition, etc.—Case at Bar.*—In a prosecution for keeping open a swimming pool on Sunday, testimony to show the sanitary condition of the pool, the character of the people who attended it on Sundays as well as week days, that the place was conducted in an orderly manner, and that there were a large number of railway employees who could only go to the pool in the daytime on Sundays, was admissible.

10. SUNDAY—*Keeping Open Swimming Pool on Sunday—Evidence—Opinions of Physicians—Free Access to the Pool—Case at Bar.*—In a prosecution for keeping open a swimming pool on Sunday, the court committed no error in excluding from the jury the opinions of physicians as to the benefits to be derived from bathing, the effects of cleanliness and similar testimony, nor in excluding evidence that free access to the pool was extended to an orphanage and the Salvation Army, and that the employees who worked on Sunday were given the same amount of time off in the week on full pay.

11. SUNDAY—*Purpose of the Sunday Law—Instructions.*—In a prosecution for violation of the Sunday law, it was error to refuse an instruction

that "the purpose of the law in prohibiting work from being done on Sunday is to give to the public a rest from its customary labor for the benefit of both the moral and physical nature of mankind, and not for the purpose of enforcing the beliefs or tenets of any religious creed or denomination."

12. SUNDAY—*Burden of Proof.*—In a prosecution for keeping open a swimming pool on Sunday, it was error to refuse an instruction "that the burden of proof is on the Commonwealth to establish beyond a reasonable doubt that the defendant employed its servants in labor or other business on a Sabbath day, and that such labor or other business was not a work of necessity or charity."

13. SUNDAY—*Keeping Open Swimming Pool—Instruction as to Necessity of Keeping Pool Open.*—In a prosecution for keeping open a swimming pool on Sunday, it was error to refuse an instruction that if the jury found "from the evidence that the opening of Lakeside swimming pool on Sunday afternoon tends to prevent disorder or indecent exposures by persons along the streams in Roanoke county, and that the premises in and around the bathing pool were kept in an orderly and quiet manner, and the work done there was morally fit and proper to be done on Sunday, then the court instructs the jury that they may find that the work of conducting such bathing pool is a necessity within the meaning of the statute, and they should find the defendant not guilty."

14. SUNDAY—*Keeping Open Swimming Pool on Sunday—Questions of Law and Fact—Instructions.*—In a prosecution for keeping open a swimming pool on Sunday, it was error to refuse an instruction that the question of whether the act of keeping open the pool on Sunday was a work of necessity is a question of fact for the jury and that they might consider the manner in which the pool was run and the effect that the opening of it had on the good order and moral welfare of the community.

15. SUNDAY—*Keeping Open Swimming Pool on Sunday—Instructions—Work Incidental to Keeping Open the Pool.*—In a prosecution for keeping open a swimming pool on Sunday, it was error to refuse to instruct the jury that if they found that it was a public necessity to keep open the pool on Sunday then "the fact that incidentally certain persons are laboring for the purpose of taking tickets, distributing towels, or acting as life guards, does not constitute an offense within the statute."

16. SUNDAY—*Keeping Open Swimming Pool on Sunday—Instructions—Taking Case from Jury.*—In a prosecution for keeping open a swimming pool on Sunday, the court erred in instructing "the jury that the evidence in this case presents no element of necessity, either physical or moral, within the contemplation of the Virginia statute for the protection of Sunday."

Error to a judgment of the Circuit Court of Roanoke county.

*Reversed.*

The opinion states the case.

*Willis, Adams & Hunter* and *Kime & Kime,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General, Leon M. Bazile, Second Assistant Attorney-General,* and *Jackson & Henson,* for the Commonwealth.

BURKS, J., delivered the opinion of the court.

The plaintiff in error, hereinafter called the defendant, was convicted of violating the Sunday law (Code 1919, section 4570), and fined $75.00. The indictment charged the defendant with maintaining open on Sunday a public resort, used for the purpose of swimming and bathing, and keeping its employees engaged from 1:30 p. m. to 6:30 p. m. in selling admission tickets to the pool, and furnishing bathing suits and towels, and collecting the charges therefor. The indictment negatived the fact that this was household work, or other work of necessity or charity.

[1-3] Final judgment was entered against the plaintiff in error on November 10, 1921, but the bills of exception were not signed till January 9, 1922, and we are asked to dismiss the case because the bills of exception were not filed within sixty days, upon the authority of *Kelly* v. *Trehy,* 133 Va. 160, 112 S. E. 757.

The court will take judicial notice of the fact that January 8, 1922, which was the sixtieth day, fell on Sunday.

In *Bowles* v. *Brauer*, 89 Va. 466, 467-8, 16 S. E. 356, 357, it is said: "In the construction of statutes, however, the rule founded in reason, and supported by the weight of authority, independent of any statutory rule on the subject, is that when a statute prescribes a certain number of days within which an act is to be done, and says nothing about Sunday, it is to be included, unless the last day falls on Sunday, in which case the act may generally be done on the succeeding day. *Street* v. *United States*, 133 U. S. 299, 10 S. Ct. 309; *King* v. *Dowdall*, 2 Sandf. 131; *Porter* v. *Pierce*, 120 N. Y. 217." See also *Swift* v. *Wood*, 103 Va. 494, 49 S. E. 643. We think this is the proper rule. 38 Cyc. 330 and cases cited. Sunday is usually *dies non juridicus* and judicial acts performed on that day are void. *Lee* v. *Willis*, 99 Va. 16, 37 S. E. 826. But if the act to be done is authorized to be done on Sunday, then Sunday is to be counted although the last day be Sunday. *Casey* v. *Viall*, 17 R. I. 348, 21 Atl. 911, and cases cited.

The subject of Sunday observance under the statute is discussed at some length in *Pirkey Bros.* v. *Commonwealth*, *post* p. 713, 114 S. E. 764, decided today, and much that is there said has an important bearing on the questions hereinafter discussed.

[4-7] Preliminary to this discussion, it may be stated that if what is done by one is justified under the statute as a necessity, then the labor which is thereby entailed on another as a necessary incident is likewise justified. Hence we need only inquire as to the necessity of the act entailing the consequent labor, for without the labor the act could not be done. As pointed out in the *Pirkey Bros. Case*, the necessity meant by the statute is not a physical necessity, but a moral fitness or propriety of the work and labor done under the circumstances of the particular case, and whether or not the act in question

is morally fit and proper is usually a' question of fact to be determined by a jury after hearing the testimony relevant to that particular act, and receiving proper instructions from the court, upon request, as to the proper interpretation of "necessity" as used in the statute. It is the function of the court to interpret the statute, but when this has been done, it is usually the function of the jury, as the representative of the morality of the community, to determine "the moral fitness or propriety of the work" in question. But the jury cannot discharge its function, unless it is permitted to hear all the pertinent and relevant testimony offered on the subject. This does not mean that the opinions of persons living in the community are relevant to, and admissible upon, the question of the moral fitness and propriety of the act in question. Usually, they are not. Opinion evidence is only admissible where it would be helpful to the jury. If the jurors are as capable of forming their own opinions upon given data as the witness whose opinion is offered in evidence, then the opinion is not admissible. *Rosenbaum* v. *State*, 131 Ark. 251, 199 S. W. 388, L. R. A. 1918-B, 1109; 1 Greenl. Ev. (16th ed.), sec. 430-g. The law, however, recognizes "no high priest but justice," and, in a proper case, requisitions the expert in every field of human knowledge to assist in arriving at just conclusions.

[8] In the case at bar, the errors assigned relate to the rulings of the trial court in excluding testimony offered by the defendant, and in refusing to give instructions tendered by it. Under the testimony actually admitted, and the instructions given, the jury could not well have found any other verdict than the one found. In order to get the testimony in the record, the witnesses were examined before the judge, in the absence of the jury, so that there is no doubt or uncertainty as

to what their testimony would have been. The testimony of the sheriff and deputy sheriff of Roanoke county showed that for a long period of time, prior to the opening of Lakeside swimming pool, the persons living along the banks of streams in Roanoke county in the vicinity of Roanoke city, and persons passing along the public roads and streets near these streams, had been shocked and embarrassed by the great number of nude men and boys and partially nude women who could be seen on Sundays bathing or dressing and undressing along these streams. The sheriff testified that nearly every Sunday he had had calls to some parts of the county about swimming in public places; that upon one occasion he had made as many as thirty arrests at one time, and had not on that occasion arrested the small boys. The sheriff, in answer to questions, testified in part as follows:

"Q. A part of your duties as sheriff is keeping good order in the community, and I want to ask you if for some time prior to the opening of Lakeside whether or not complaints were made to you on account of bathing on Sunday along the banks of the streams and rivers of this county?

"A. Yes, quite frequently; nearly every Sunday we had calls to some parts of the county about swimming in public places, and boys bathing without bathing suits on, and running around on the banks and through the fields and such things as that.

"Q. Was that condition pretty prevalent along Mason's creek and Roanoke river?

"A. Yes, sir.

"Q. Near where Lakeside is?

"A. Yes, sir. There is one place just above there about a quarter of a mile I will say, that we would get calls from there every few days and Sunday.

"Q. On some Sundays about how many people did you have to arrest on account of this?

"A. I recall one Sunday we went down, that was when my father was sheriff and I was deputy, and I believe we brought up about thirty some and there was a bunch of little boys there that we wouldn't even bring up.

"Q. Was this condition that you are talking about in sight of the public roads and fords and people's homes?

"A. Yes, sir.

"Q. When you made some of these arrests that you speak about, how were the parties arrested, or at least some of them, dressed, or were they dressed?

"A. Some of them didn't have on anything, and some of them would have on just a pair of trousers or something like that, but some of them had nothing on at all.

"Q. You say that was frequent?

"A. Yes, sir.

"Q. After the opening of Lakeside, what was the condition in the same part of the county in which you had these complaints before, as to a continuance of these complaints on Sunday?

"A. It has been greatly relieved. This past summer I don't believe I got a call.

"Q. To what extent, if any, has the opening of Lakeside, in your opinion, bettered the law-abiding condition of the community?

"A. So far as swimming is concerned it has bettered it to a great extent; it has practically eliminated it.

"Q. You mean the elimination of the people with naked bodies along the highway and streams?

"A. Yes, sir.

"Q. Mr. Hatcher, does your experience convince you that the bathing of these persons whom you have talked

about in a nude and semi-nude condition, as you have said, tend to lead to disorder in the community?

"A. Yes, sir; to a great extent it did. I recall down here on Mason's creek, where I was speaking about a few minutes ago, it got so bad that people in that section, right above Lakeside, up where we call Kessler's mill, it got so bad that people couldn't go out, couldn't go to church or anywhere, without going through that crowd, and there was complaint every Sunday and lots of times of an evening during the week, of disorderly crowds running on the banks, so that women and girls could not come out at all without being exposed to all of it.

"Q. And the opening of Lakeside has eliminated that?

"A. Yes, sir; it has entirely."

This testimony had an important bearing on the moral fitness and propriety of the work in question, and it was error to exclude it.

[9, 10] Testimony was also offered to show the sanitary condition of the pool, the character of the people who attended on Sundays as well as week days; that the place was conducted in an orderly and proper manner, and that there are a large number of railway employees who can only go to the pool in the day time on Sundays. These are matters that relate, more or less directly, to the moral fitness and propriety of keeping the place open on Sunday, and it was error to exclude them from the jury. The court committed no error, however, in excluding from the jury the opinions of physicians as to the benefits to be derived from bathing, the effects of cleanliness and similar testimony, nor evidence that free access to the pool was extended to an orphanage and the Salvation Army, nor that the employees who worked on Sunday were given the same amount of time during the week on full pay.

[11-15] The defendant asked for twelve instructions, all of which the court refused. In accordance with the views hereinbefore expressed, we are of opinion that the court erred in refusing instructions numbered 1, 2, 4, 5, 8 and 11, which are as follows:

1. "The court instructs the jury that the purpose of the law in prohibiting work from being done on Sunday is to give to the public a rest from its customary labor for the benefit of both the moral and physical nature of mankind and not for the purpose of enforcing the beliefs or tenets of any religious creed or denomination."

2. "The court instructs the jury that the burden of proof is on the Commonwealth to establish beyond a reasonable doubt that the defendant employed its servants in labor or other business on a Sabbath day, and that such labor or other business was not a work of necessity or charity.

4. "The court instructs the jury that if they find from the evidence that the opening of Lakeside swimming pool on Sunday afternoon tends to prevent disorder or indecent exposures by persons along the streams in Roanoke county, and that the premises in and around the bathing pool were kept in an orderly and quiet manner, and the work done there was morally fit and proper to be done on Sunday, then the court instructs the jury that they may find that the work of conducting such bathing pool is a necessity within the meaning of the statute and they should find the defendant not guilty."

5. "The court instructs the jury that a work of necessity, as meant by the statute of Virginia, is not a physical and absolute necessity, but a moral fitness or propriety of the work or labor or act done under the circumstances of each particular case."

8. "The court instructs the jury that the question of whether the act of keeping open the Lakeside swimming

45

pool on Sunday afternoons was a work of necessity within the meaning of the statute is a question of fact for the jury, and that in determining this fact the jury may consider the manner in which the pool and the premises and the business in connection with it were run, the effect that the opening of this place has on the good order and moral welfare of the community and whether or not the opening of this place is for the orderly and moral recreation of the public."

11. "The court instructs the jury that if they find from evidence that it is a public necessity, within the meaning of the statute, that Lakeside swimming pool be kept open on Sunday afternoons, then the fact that incidentally certain persons are laboring for the purpose of taking tickets, distributing towels, or acting as life guards, does not constitute an offense within the statute."

[16] We are also of opinion that the trial court erred in taking from the jury the question of fact involved in the case, by its instruction No. 1, given at the instance of the Commonwealth, which is as follows:

1. "The court instructs the jury that the evidence in this case presents no element of necessity either physical or moral within the contemplation of the Virginia statute for the protection of Sunday."

For the errors aforesaid, the judgment of the trial court must be reversed, the verdict of the jury set aside, and the case remanded for a new trial to be had in conformity to the views hereinbefore expressed.

*Reversed.*