## BROAD–GRACE ARCADE CORPORATION
### v. BRIGHT, Mayor, et al.
### No. 224.

District Court, E. D. Virginia.
March 28, 1931.

Christian & Barton, of Richmond, Va., for complainant.

Collins Denny, Jr., Asst. Atty. Gen., for defendants.

Before PARKER, Circuit Judge, and SOPER and WAY, District Judges.

SOPER, District Judge.

Broad-Grace Arcade Corporation, owner and operator of a large and valuable building located on important thoroughfares in the city of Richmond, seeks an injunction against the mayor, the director of public safety, and the chief of police of the city, to restrain them from interfering with the complainant, or its employees, in the operation of a miniature golf course for profit in the building on Sundays. The golf course was opened to the public on two Sundays in January of 1931, and was patronized by a considerable number of persons. The plaintiff was then ordered by the police to close the place. Having refused to do so, its manager was arrested, charged with violation of the Sunday law of Virginia, brought to trial before the police justice of the city, and convicted. An appeal was taken to the hustings court of the city, where the case was tried anew before a jury, which disagreed. A new trial has been arranged for April 27, 1931. The complainant has been warned that, if it attempts to operate the golf course on Sundays, its employees will be arrested and prosecuted to the fullest extent for each violation of the law.

A statutory court of three judges has been organized under the provisions of 28 USCA § 380, and a hearing has been had on five

days' notice upon complainant's prayer for an interlocutory injunction pending the final determination of the case. The jurisdiction of the court with reference to the amount involved, the character of the defendants as state or municipal officers, and the right of the complainant to equitable relief, has been questioned; but these matters need not now be discussed, because we are of the opinion that, on the merits, the complainant is not entitled to the relief which it now seeks.

 The contention of complainant is that the Sunday law of Virginia, codified in section 4570 of the Virginia Code of 1930, as construed by the Supreme Court of Appeals of the state, violates the due process clause of the Fourteenth Amendment of the Constitution of the United States; and also that the administration and enforcement of the statute by the defendants is directed so exclusively against the complainant as to amount to a practical denial of the equal protection of the law secured to it by that amendment.

Section 4570 of the Virginia Code, so far as it relates to this controversy, is as follows:

"If a person on a Sunday be found laboring at any trade or calling, or employ his apprentices or servants in labor or other business, except in household or other work of necessity or charity, he shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than five dollars for each offense. Every day any person or servant or apprentice is so employed shall constitute a distinct offense."

This statute has been construed in three recent cases by the Supreme Court of Appeals of Virginia wherein the validity of the act under the Virginia Constitution was established and the meaning of the law was construed. In Crook v. Commonwealth, 147 Va. 593, 596, 136 S. E. 565, 566, 50 A. L. R. 1043, the latest case, the court said:

"This section of the Code was considered by the court in the recent cases of Lakeside Inn Corp. v. Commonwealth, 134 Va. 696, 114 S. E. 769, and Pirkey Bros. v. Commonwealth, 134 Va. 713, 114 S. E. 764, 29 A. L. R. 1290. In the latter case, the very able and illuminating opinion by Judge Burks expresses fully our views on the question of Sunday observance, religious liberty, a Christian state, the constitutionality and the construction of the statute as applied to the facts in that case. At page 722 of 134 Va., 114 S. E. 766, he says: 'While the provisions of the statute, therefore, cannot be enforced as a religious observance, the great moral force that is back of it will make itself felt in its enforcement in conformity with the views of that force.' Referring more specifically to a proper construction of the statute at page 726 of 134 Va., 114 S. E. 768, he speaks thus:

"'* * * The statute should have a reasonable construction so as to promote the end for which it was enacted, and thus cover every class of labor at every trade, calling or other business not excepted by the statute. The statute should also be construed in the light of the age in which we live, recognizing the fact that there are things which the community regard as necessary that were not necessities when the statute was first enacted; that, to escape the penalty pronounced by the statute, the labor performed must be of the class excepted by the statute, or recognized by the community as a necessity, and that what is or is not a necessity is generally a question of fact for the jury and not one of law for the court. There are cases where the question is one of law for the court. Where the act done is plainly a violation of the statute, as where a contractor, without emergency, is running a steam shovel on Sunday, or the act is plainly one of necessity, as where the owner lifts his ox out of the ditch; in either case, the question is one of law for the court. But if the act be one about which fair minded men might reasonably differ as to whether or not it is a work of necessity, then it is a question of fact for the jury. * * *'

"At page 725 of 134 Va., 114 S. E. 767, he uses this language: 'Its aim is to prevent the physical and moral debility which springs from uninterrupted labor, and in this respect it is a beneficent and merciful law. It gives one day to the poor and the dependent, from the enjoyment of which no capital or power is permitted to deprive them. It is theirs for repose, for social intercourse, for moral culture, and, if they choose, for divine worship.'"

Applying these principles, the court held that the question of whether the playing of a game of professional ball on Sunday, to which the public was admitted without charge, was a work of necessity or charity within the exception of the statute, was rightfully submitted to the jury. In the two previous cases, the same court had decided that it was likewise a question for the jury to decide whether the operation of a public resort for swimming and bathing, or the operation of a public cave or grotto on Sundays, was a work of necessity or charity. It is difficult to discern any material distinction be-

tween the legal aspects of the complainant's action and those involved in the cases cited.

But the complainant says that the Virginia statute has become so vague and uncertain, through the liberal interpretation placed upon it by the Virginia court, as to offend the Constitution of the United States. The contention is that, by judicial construction, the word "necessity" has been taken out of the exception in the statute, and in its place there has been substituted a standard of moral fitness and propriety which is so lacking in definiteness as to be incompatible with due process of law. This contention of the complainant is suggested by certain passages in the opinions in the cited cases, which, considered apart from the context, lend support to the complainant's theory. Thus in Lakeside Inn Corp. v. Commonwealth, where the operation of a swimming and bathing pool on Sunday was under consideration, the court said (134 Va. 696, 700, 114 S. E. 769, 771):

"We need only inquire as to the necessity of the act entailing the consequent labor, for without the labor the act could not be done. As pointed out in the Pirkey Bros. Case, the necessity meant by the statute is not a physical necessity, but a moral fitness or propriety of the work and labor done under the circumstances of the particular case, and whether or not the act in question is morally fit and proper is usually a question of fact to be determined by a jury after hearing the testimony relevant to that particular act, and receiving proper instructions from the court, upon request, as to the proper interpretation of 'necessity' as used in the statute. It is the function of the court to interpret the statute, but when this has been done, it is usually the function of the jury, as the representative of the morality of the community, to determine 'the moral fitness or propriety of the work' in question. But the jury cannot discharge its function, unless it is permitted to hear all the pertinent and relevant testimony offered on the subject."

Moreover, the following instruction to the jury was approved both in that case and in Crook v. Commonwealth:

"The court instructs the jury that a work of necessity, as meant by the statute of Virginia, is not a physical and absolute necessity, but a moral fitness or propriety of the work or labor or act done under the circumstances of each particular case."

If this instruction be read apart from the general discussion of the court, it is open to the interpretation that the criterion of the work performed is not its necessity, but its moral fitness and propriety as determined by the court or jury; and such a statute might perhaps be held too vague to support a criminal charge. See the following cases for illustrations of statutes held invalid because they offered no standard of conduct that it is possible to know: International Harvester Co. v. Kentucky, 234 U. S. 216, 34 S. Ct. 853, 58 L. Ed. 1284; United States v. Cohen Grocery Co., 255 U. S. 81, 41 S. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045; Connally v. General Const. Co., 269 U. S. 385, 46 S. Ct. 126, 70 L. Ed. 322; Cline v. Frink Dairy Co., 274 U. S. 445, 47 S. Ct. 681, 71 L. Ed. 1146. But, when the recent opinions of the Virginia court are examined as a whole, it is clear that the construction given to the statute by the court is not found in its entirety within the terms of the instruction. In substance, the court held that the work of necessity covered by the exception in the statute is not merely one of absolute or physical necessity, not merely something required to sustain physical existence or safety of person or property, but it embraces all work essential to the moral welfare of the people. Considerations of moral welfare are as pertinent as those which affect physical well being, but in neither case is it sufficient that the act be beneficial. The fundamental element of necessity must also exist.

So construed, the statute takes on a meaning much more precise, and is not obnoxious, in our opinion, to the rule that a criminal enactment must set up an ascertainable standard of guilt. It is true that cases occur in which opinions may differ as to whether certain conduct falls within the condemnation of the law; but as said by Mr. Justice Holmes in Nash v. United States, 229 U. S. 373, 377, 33 S. Ct. 780, 781, 57 L. Ed. 1232:

"The law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death. 'An act causing death may be murder, manslaughter, or misadventure, according to the degree of danger attending it' by common experience in the circumstances known to the actor. 'The very meaning of the fiction of implied malice in such cases at common law was, that a man might have to answer with his life for consequences which he neither intended nor foresaw.' Commonwealth v. Pierce, 138 Mass. 165, 178, 52 Am. Rep. 264; Commonwealth v. Chance, 174

Mass. 245, 252, 54 N. E. 551, 75 Am. St. Rep. 306. 'The criterion in such cases is to examine whether common social duty would, under the circumstances, have suggested a more circumspect conduct.' 1 East, P. C. 262. If a man should kill another by driving an automobile furiously into a crowd, he might be convicted of murder, however little he expected the result. See Reg. v. Desmond, and other illustrations in Stephen's Dig. Crim. Law, art. 223, 1st Ed. p. 146. If he did no more than drive negligently through a street, he might get off with manslaughter or less. Reg. v. Swindall, 2 Carr. & K. 230, 2 Cox, C. C. 141; Rex v. Burton, 1 Strange, 481. And in the last case he might be held although he himself thought that he was acting as a prudent man should. See The Germanic, 196 U. S. 589, 596, 25 S. Ct. 317, 49 L. Ed. 610, 613."

See, also, Hygrade Provision Co. v. Sherman, 266 U. S. 497, 502, 45 S. Ct. 141, 143, 69 L. Ed. 402, where Mr. Justice Sutherland said:

"Many illustrations will readily occur to the mind, as for example statutes prohibiting the sale of intoxicating liquors and statutes prohibiting the transmission through the mail of obscene literature, neither of which have been found to be fatally indefinite because in some instances opinions differ in respect of what falls within their terms."

We are satisfied that the language of the statute, so interpreted, has a meaning sufficiently clear to permit its successful application. Indeed, the interpretation of the Virginia court is not new. It seems to have been first announced in regard to a similar statute in 1849 in Flagg v. Millbury, 4 Cush. 243, by the Supreme Judicial Court of Massachusetts, and to have been followed by a large number of states in various sections of the Union. See the cases cited, 37 Cyc. 552. The language has not heretofore been deemed so vague as to jeopardize the safety of the individual citizen, and we believe that it still furnishes a satisfactory guide.

On the second branch of the case, the complainant contends that the action of the defendants in enforcing the Sunday law against it is unjustly discriminatory, when contrasted with the failure of the defendants to enforce it against persons engaged in divers other activities in the same locality. Thus it is alleged in the bill that for a long time it has been the policy of the defendants to permit the operation on Sunday of places of business devoted to the sale of soft drinks, tobacco, confectionery, gasoline, newspapers, and to the operation of swimming pools, rowboats, and auto service stations, as well as various facilities by which the people are furnished with electric light and means of communication or transportation. It is also alleged that there has been no arrest by the defendants of any person in Richmond during the past five years for violation of the Sunday law when the labor performed was incidental to the furnishing of recreational facilities to the public. The answer of the defendants denies that the administration of the law is discriminatory, unequal, or oppressive, or directed exclusively against the complainant. It shows that light and means of communication and transportation are necessarily furnished to the public on Sunday; that, prior to five years ago, prosecutions had been brought and the defendants acquitted for such activities on Sundays as the sale of confectionery, soft drinks, and tobacco; operation of gas and oil stations; operation of swimming pools and rowboats; and that, during the past five years, there have been other prosecutions of persons for violations of the statute not included amongst those enumerated by the complainant in its charge of discrimination. The answer also refers to the recent decisions of the Supreme Court of Appeals of Virginia wherein it was ruled that, in doubtful cases, the necessity of the work or labor was a question for the jury to decide.

Under the facts thus submitted to the court on bill and answer, we do not think the complainant is entitled to an injunction because of discrimination against it. The complainant relies upon the decision of the Supreme Court in Yick Wo v. Hopkins, 118 U. S. 356, 6 S. Ct. 1064, 30 L. Ed. 220, where it was held that an administration of an ordinance for the carrying on of a lawful business violates the Constitution of the United States, if it makes arbitrary and unjust discrimination, founded on difference of race, between persons otherwise in similar circumstances. The court found that there was an unjust discrimination by the authorities against the Chinese by reason of their race, which amounted to a denial of equal justice within the prohibition of the Constitution.

But we do not find from the pleadings in the case at bar that the complainant has been the victim of arbitrary and unfair discrimination. Even if we confine our attention to the allegation that during the past five years there have been no prosecutions in Richmond of persons engaged in labor in connection with the furnishing of recreational activities

on Sunday, there is no foundation for the complainant's charge of an unconstitutional administration of the law. It does not appear that in Richmond labor of any kind is permitted; provided only that it is connected with the operation of facilities for recreation. There are doubtless forms of recreation which no one attempts to furnish on Sundays. Furthermore, it appears that the defendants have. from time to time instituted criminal charges to test the application of the law to various activities in that locality on Sundays. It is a matter of common knowledge that there is always more or less conflict between those who desire to see the Sunday laws strictly enforced and those who would ignore them altogether for purposes of commercial gain. This conflict creates a difficult problem for the executive authorities to solve, especially when new forms of business are involved. It involves the bringing of prosecutions from time to time, so that the law may be enforced and the courts may be given an opportunity to pass upon charges of violation. We do not find in the pleadings in this case any foundation for the belief that the executive authorities have willfully refused to enforce the Sunday laws in Richmond; or that they have singled out the complainant for prosecution from amongst those who desire to profit by furnishing recreation to the people of Richmond on Sunday. We think, therefore, that the application for an interlocutory injunction should be denied.