# 𝖂𝖕𝖙𝖍𝖊𝖛𝖎𝖑𝖑𝖊

RUSSELL L. WILLIAMS v. COMMONWEALTH OF VIRGINIA.

June 8, 1942.

Record No. 2569.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston
and Spratley, JJ.

The opinion states the case.

*R. E. Garland* and *Robert T. Barton, Jr.*, for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Carrington Thompson, Special Assistant,* for the Commonwealth.

Gregory, J., delivered the opinion of the court.

Russell L. Williams was convicted by a jury of working on Sunday in violation of Code, section 4570 (Michie). He brings his case before us upon a writ of error to the judgment which confirmed the verdict of the jury, assigning many errors alleged to have been committed by the trial court.

Williams was the manager of the State and Lee moving picture theatres in Farmville, Virginia. A number of the citizens of Farmville and the surrounding country appealed to

him to open the theatres on Sunday, and as a result of this repeated solicitation, the owners made an arrangement with the Junior Woman's Club of Farmville, whereby it was agreed that the theatres would be operated on Sundays, and the net proceeds above actual operating expense would be turned over to the Junior Woman's Club for such charitable work as the club might think proper. This arrangement was to continue until the proceeds to be turned over to the club amounted to $1,000. In order to secure this amount, it was estimated that the theatres would have to operate on Sundays for from four to six months. If they operated at a loss, no part of such loss was to be borne by the club. The theatres were not to be operated during the hours generally regarded as those for church services. They were to open at 2:00 p. m. and run till 6:00 p. m., and reopen at 9:15 p. m. and run until one exhibition was completed.

According to the arrangement the theatres opened on Sunday, September 14, 1941, and during the exhibition a police officer arrested the manager, and his conviction followed.

The statute, section 4570, is in the following language:

"If a person on a Sunday be found laboring at any trade or calling, or employ his apprentices or servants in labor or other business, except in household or other work of necessity or charity, he shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than five dollars for each offense. Every day any person or servant or apprentice is so employed shall constitute a distinct offense and the court in which or the justice by whom any judgment of conviction is rendered may require of the person so convicted a recognizance in a penalty of not less than one hundred or more than five thousand dollars, with or without security, conditioned that such person shall be of good behavior, and especially to refrain from a repetition of such offense, for a period not exceeding twelve months. This section shall not apply to furnaces, kilns, plants and other business of like kind that may be necessary to be conducted on Sunday, nor to the sale of gasoline, or any motor vehicle fuel, or any motor oil or oils."

There have been three Virginia cases in which our statute has been construed: *Pirkey Bros.* v. *Commonwealth*, 134 Va. 713, 114 S. E. 764, 29 A. L. R. 1290; *Lakeside Inn Corp.* v. *Commonwealth*, 134 Va. 696, 114 S. E. 769 and *Crook* v. *Commonwealth*, 147 Va. 593, 136 S. E. 565, 50 A. L. R. 1043. However, these cases considered only works of necessity and not works of charity. We have not been referred to any case in Virginia where a work of charity in relation to the Sunday observance statute has been before our court.

[■] In the *Pirkey Bros. case*, the question for decision was whether it was a violation of the statute to keep open a cave on Sunday where an admission fee was charged. The case was submitted to a jury on the question of necessity, and a conviction followed. This court affirmed the judgment of the trial court. Judge Martin P. Burks, speaking for the court, said that "no fixed and unvarying definition of 'necessity' as used in the statute can be given;" that the issue must be decided by the juries in the respective localities who are selected for their fitness and who will reflect the community opinion of the moral fitness and propriety of the work. Judge Burks said:

"We cannot, however, agree with the few courts that hold that the word 'necessity' must be construed to mean the same thing now as it did when the original act was passed in 1779. Many things that were deemed luxuries then, or had no existence at all, are now deemed necessaries. For example, street railways, telegraphs and telephones. The word is elastic and relative, and must be construed with reference to the conditions under which we live, and yet the elasticity must not be extended so far as to cover that which is not needful but simply desirable, and thereby defeat the manifest purpose of the statute to set apart Sunday as a day of rest from ordinary labor. *State* v. *James*, 81 S. C. 197, 62 S. E. 214, 18 L. R. A. (N. S.) 617, 128 Am. St. Rep. 902, 16 Ann. Cas. 277.

"In an early Massachusetts case (*Flagg* v. *Millbury*, 4 Cush. 243) it was said that the necessity meant was not a physical and absolute necessity, but a moral fitness or propriety of the

work and labor done under the circumstances of each particular case * * * ."

It was held that the burden of proof was upon the Commonwealth to prove that the work done *was not* a work of necessity or that it *was not* a work of charity. The burden of proving every element of the offense was placed upon the Commonwealth.

The *Lakeside Inn Corp. case* followed very closely the *Pirkey Bros. case,* and the principles of the former were applied in the latter where the question was whether keeping open on Sunday a swimming pool was a work of necessity. This court reversed the judgment of conviction of the lower court on instructions and on the failure of the lower court to admit certain material evidence. In the course of the opinion Judge Burks said:

"Preliminary to this discussion, it may be stated that if what is done by one is justified under the statute as a necessity, then the labor which is thereby entailed on another as a necessary incident is likewise justified. Hence we need only inquire as to the necessity of the act entailing the consequent labor, for without the labor the act could not be done. As pointed out in the *Pirkey Bros. case,* the necessity meant by the statute is not a physical necessity, but a moral fitness or propriety of the work and labor done under the circumstances of the particular case, and whether or not the act in question is morally fit and proper is usually a question of fact to be determined by a jury after hearing the testimony relevant to that particular act, and receiving proper instructions from the court, upon request, as to the proper interpretation of 'necessity' as used in the statute. It is the function of the court to interpret the statute, but when this has been done, it is usually the function of the jury, as the representative of the morality of the community, to determine 'the moral fitness or propriety of the work' in question."

In the *Crook case* the question was whether playing baseball on Sunday, where the players donated their services and there was no admission charge, violated the statute. This court, in a three to two decision, upheld a conviction. Judge

Burks and Judge Chichester in their dissent were of opinion that such a game by the players was purely one of sport and recreation rather than laboring at their regular calling and, therefore, not a violation of the statute.

■ Generally, when the trial court has properly instructed the jury on the meaning and interpretation of what is a work of necessity under the statute as defined and construed in the *Pirkey Bros. case*, the finding of the jury will be conclusive where the evidence is conflicting. In the case at bar the court granted very comprehensive instructions following the rule in the *Pirkey case*, and defined as clearly as it could the indefinite phrase "work of necessity".

On the other hand, in the case at bar it is uncontradicted that the net proceeds will go to charity. There was no evidence that the exhibitions were morally unfit, or that there was any disorder. Under Code, sections 378c and 378d (Michie), all pictures must be passed upon and licensed by the State Board of Censors. If they are immoral, salacious or indecent no license can be obtained for their exhibition. There was no evidence that the license had been refused for the pictures, or that they were unfit to be exhibited. The pictures were not exhibited during the hours for church services. There was no evidence that the exhibitions offended the moral sensibilities of anyone or that they disturbed the observance of the Sabbath by those who chose to observe it.

The evidence did disclose that Williams was working on Sunday at his usual work or calling. Under the statute, if Williams was engaged in a work of charity, he was not guilty of any offense.

The court gave several instructions defining a work of charity or necessity and placed the burden of proof upon the Commonwealth. The court defined a work of charity in instruction "V" in this language:

"The court instructs the jury that 'work of charity' as used in the statute means that the work itself must itself be charitable; that if the defendant was working at his usual trade or calling which in itself is not charitable, and was receiving consideration for such work even though the net proceeds of

the result of his labor are given to charity, he has violated the statute unless the jury further believes that the accused was engaged in a work of necessity as defined in other instructions."

The defendant strongly objected to the court's interpretation of a work of charity and offered instruction "A" as the proper interpretation. It follows:

"The court instructs the jury that if they believe from the evidence that the exhibitor of the Lee and State Theatres received no compensation from the proceeds of the Sunday exhibitions of motion pictures in these theatres and that the proceeds above actual operating expenses are to be used for charitable purposes, then you should find the defendant not guilty. The court further instructs the jury that the payment out of the gross receipts of the actual expenses incurred in operating the theatres on Sunday does not constitute the payment of any compensation to the exhibitor."

Instruction "A" was refused, and its refusal and the granting of instruction "V" are assigned as error.

We are of the opinion that it was reversible error for the court to give instruction "V". On the other hand instruction "A", which was refused, properly gave the true meaning and application of the statute to the particular facts of this case. We do not think the test as to whether the particular work of Williams was charitable was to be found solely in his actual work itself to the exclusion of a consideration of the primary purpose of the exhibition; to-wit, that the profits will be devoted to charity.

Here the record shows a plan to dedicate to charity a substantial sum of money to be derived from the operation of the two theatres on Sundays. One thousand dollars received from Sunday operations will be turned over to and will be applied by the Junior Woman's Club solely for charity. Yet instruction "V" told the jury that they could not consider this fact which, according to our view, was the principal element to be considered. The actual work itself of Williams was purely incidental if the exhibitions were solely for charitable

purposes, and here this has been conclusively shown. *Lakeside Inn Corp.* v. *Commonwealth, supra.*

In Virginia we have recognized that there are exhibitions of pictures for purely charitable purposes, and that it is not confined to the work itself of the actual operations. For instance, sections 156 and 157 of the Tax Code, in fixing the license fees, give consideration to pictures shown "for benevolent, charitable or educational purposes." In section 157 no person shall exhibit, without first obtaining a license therefor, any theatrical performance or any exhibition of any kind "except for benevolent or charitable or educational purposes." Again, in Code, section 378d (Michie), where permits are required by the board of motion picture censorship, consideration is given to motion picture films "intended solely for strictly educational, charitable and religious purposes", and further, in relation to permit fees, it is provided that the fee "for scientific, educational, charitable and religious films shall be 50 cents for each permit * * * ."

The Georgia cases and those from the other jurisdictions cited by counsel afford little help here. In those jurisdictions the statutes are different from ours, and they probably do not have statutes such as sections 156 and 157 of the Tax Code and 378d of the Code of Virginia, in which this State has recognized that exhibitions of motion pictures may be for charitable purposes. Those statutes may be considered with section 4570 which permits work on Sunday if it is a work of charity. How could motion pictures be shown for charitable purposes, as comprehended by the tax statutes and 378d of the Code, except by applying the proceeds to charity? Only where the proceeds are devoted to charity can those statutes apply.

Instruction "V" emphasized a minor element, the work itself of Williams, and overlooked the major one, the application of the funds to charity.

If instruction "A" had been granted and instruction "V" refused, the jury would have been compelled to find that the operation of the theatres was a work of charity, and that Williams was not guilty. There being no conflict in the evidence

on this point, it leaves nothing for the future consideration of the jury, and final judgment will be entered here dismissing the warrant because, as stated, the evidence is conclusive that the exhibitions were for charitable purposes.

*Reversed.*

CAMPBELL, C. J., dissenting.

EGGLESTON, J., concurring.

I concur in the result reached in the opinion of Mr. Justice Gregory that the prosecution should be dismissed. But I think the dismissal should be placed on the ground that the defendant was engaged in a "work of necessity" within the meaning of the statute.

As the quotation in the opinion of Mr. Justice Gregory points out, the word "necessity" is "elastic and relative, and must be construed with reference to the conditions under which we live". Our ideas of what is a "necessity" have undergone a change. We now recognize as necessities things which were regarded as luxuries or were even unknown when the statute was passed.

Due to the complexity of our present day civilization and the strain under which we now live and work, relaxation and recreation are just as much necessities as food and drink. The mind and body cannot be kept in condition without food. Neither can they be kept fit without relaxation and recreation.

When this statute was passed, in 1779, recreation was free and readily accessible to all. This is no longer the case. Nowadays recreation must be largely purchased from those who are engaged in the business of furnishing it. Consequently, we have those who operate bathing beaches, swimming pools, golf courses and baseball parks, where recreation is furnished for a price both on weekdays and on Sundays. In a similar manner and for a like purpose, the Federal, State and municipal governments operate recreational parks through their respective employees. Except during the present emergency, service stations throughout the country are kept open on Sun-

days in order that those who are so disposed may purchase gasoline and enjoy an outing in their automobiles, relax and "re-create" themselves for the coming week. All of these things are permitted because we recognize that those furnishing the means of recreation are engaged in a "work of necessity."

The same is true of moving pictures. Everywhere they are regarded as an orderly and innocent means of recreation and amusement. Indeed, the State recognizes this and provides for their censorship and regulation.

To deny to many people the opportunity of attending moving pictures on Sundays is to exclude them from their chosen form of recreation altogether, for that is the only day on which they are free from their work. Moreover, that is the day set aside both by law and custom for rest and recreation.

This situation is not confined to the cities alone. With the coming of automobiles and good roads, many of those living in the country obtain relaxation, recreation and amusement by patronizing places where these things are furnished for a price. Therefore, furnishing the means of recreation has come to be a "work of necessity" throughout the State.

Since the plaintiff in error was engaged in a "work of necessity" permitted by the statute, it follows that the prosecution should be dismissed.

HOLT and SPRATLEY, JJ., concur in this opinion.