# Richmond

## James E. Rich, Jr. v. Commonwealth of Virginia.

October 8, 1956.

Record No. 4595.

Present, Hudgins, C. J., and Eggleston, Spratley and Whittle, JJ.

The opinion states the case.

*E. Ralph James (James, Richardson and James*, on brief), for the plaintiff in error.

*Thomas M. Miller, Assistant Attorney General, (J. Lindsay Almond, Jr., Attorney General*, on brief), for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

James E. Rich, Jr., hereinafter called the defendant, was found guilty by a jury of violating the Sunday Law (Virginia Code, 1950, § 18-329, as amended by Acts 1954, chapter 131) and fined $100. The warrant upon which he was tried charged the defendant with laboring at his trade or calling by operating a retail grocery store on Sunday, June 12, 1955. It negatived the fact that he was engaged in household work or other work of necessity.

The evidence is without conflict, it being conceded, upon the trial, that sales of groceries were being made by employees of the defendant as charged, and that the labor involved was not a work of charity. The sole issue was whether or not the defendant was engaged at the time alleged in the warrant in a work of necessity within the meaning of the statute.

The Commonwealth presented four witnesses, G. W. Vaughan, a resident of the City of Warwick, who caused the warrant to be issued, testified that on Sunday, June 12, 1955, he saw customers purchasing groceries and an employee of the defendant cutting up meat in the store of the defendant on Jefferson Avenue, in Warwick. Vaughan stated that he did not make any purchases on that date; but that he had made purchases from the same store on previous Sundays. He declared that because of religious convictions he was opposed to grocery stores being open on Sunday; but agreed that his convictions had not been strong enough to keep him from making Sunday purchases when he desired to do so.

C. B. Le Hew, a former manager of the store involved, and at the time of the trial the manager of another store of the defendant, testified that the store was open for business on June 12, 1955, and that it was kept open for business seven days a week, from eight a.m. to midnight.

H. L. Curlee, a district supervisor for Colonial Stores, the operator of a large chain of grocery stores, testified that his employer operated three stores in the City of Warwick, and that two of them were kept

open seven days a week. He also said that Florida Orange Store, a large supermarket in Warwick, was open for business seven days a week.

A. I. Sansone testified that he owned and operated a supermarket in Warwick, and that he kept it open seven days a week.

The Commonwealth then, over the objection of the defendant, introduced in evidence a plat or map showing the location of eighty-six grocery stores in Warwick.

At the conclusion of the Commonwealth's evidence, the defendant moved to strike the evidence on the ground that it did not establish beyond a reasonable doubt that the labor performed by the defendant was not a work of necessity within the meaning of the statute. The court overruled the motion, the defendant excepted and thereupon presented fourteen witnesses, including himself.

Rich testified that he owned two supermarkets, grocery stores, in Warwick, one of them located on Jefferson Avenue since 1953, and the other, the store involved, on Thirty-ninth Street, since June, 1949, and that he had operated both of them seven days a week since he began business.

Leroy Woody, Chief of Police of the City of Warwick, since July 1st, 1944, stated that he was acquainted with the operation of the stores of the defendant, and that there had never been any complaints of disorder or disturbance around either of them.

Twelve witnesses, Warwick retail grocery store operators or employees, testified that they had been keeping their stores open on Sundays for many years, some for the preceding two years and others for much longer periods. One of these witnesses, John T. Christian, said that he had operated his grocery store in Warwick for the preceding seventeen years, and that it had been open for business on Sundays during the entire period except for a short time during World War II, when it was not necessary for him to open on Sundays, because he got sufficient business six days of the week. On cross-examination by the Commonwealth's Attorney, he stated that it was now necessary that his store be kept open on Sundays because "People need bread and milk and things like that on Sunday."

Linwood C. Batkins said that he had operated a non-prescription drug store, selling bread and other articles on Sunday for three years, and that the store had been kept open seven days a week approximately for five years before he acquired it.

R. L. Seaboldt, pharmacist and manager of People's Drug Store,

in Warwick, said that his store was regularly open on Sundays for the sale of bread and various other items, such as were sold in grocery and hardware stores.

A. C. Smith declared that he kept his grocery store, located across the street from the Court House of the City of Warwick, open on Sundays.

At the conclusion of all of the evidence, defendant moved the court to strike the evidence upon the ground that it was insufficient to justify a verdict of guilty, in that it did not show that the labor engaged in by defendant's employees was not a work of necessity. The motion was overruled. Upon the return of the verdict of the jury, defendant moved to set aside the verdict for the same reason. This motion was also overruled, and judgment was entered in accordance with the jury's verdict. Defendant duly excepted, and we granted this appeal.

Defendant assigns several grounds of error to actions of the trial court. He relies principally upon the failure of the court to sustain his motions to strike the evidence, and to set aside the verdict of the jury, for the reasons assigned in said motions. Other alleged errors relate to the admission and rejection of evidence and the admission of the map showing the location of numerous grocery stores in Warwick.

[█] Before discussing the weight and effect of the evidence, it may be well to consider the statute involved, its purpose and its meaning.

The pertinent portion of § 18-329, Code of Virginia, as amended, reads as follows:

"If a person on a Sunday be found laboring at any trade or calling, or employ his apprentices or servants in labor or other business, except in household or other work of necessity or charity, he shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than five dollars for each offense. * * * This section shall not apply to furnaces, kilns, plants and other business of like kind that may be necessary to be conducted on Sunday, nor to the sale of gasoline, or any motor vehicle fuel, or any motor oil or oils, nor to the operation of motion picture theatres." (Code 1887, § 3799; Acts 1908, p. 258; Acts 1916, p. 751; Acts 1932, p. 596; Acts 1954, Chapter 131, pp. 127, 128.)

The background and history of the above section and the object and purpose of Sunday legislation have been fully discussed and reviewed by Judge Burks, a learned and eminent jurist, in the leading

case of *Pirkey Bros.* v. *Commonwealth*, 134 Va. 713, 114 S. E. 764, 29 A. L. R. 1290. Judge Burks, citing many authorities, pointed out that the statute cannot be enforced as a religious observance; but that it is enforceable as a valid exercise of the police power of the State, its purpose being to protect all persons from the physical and moral debasement which comes from uninterrupted labor.

■ Judge Burks, in discussing a definition of the word "necessity" in the statute, said that "No fixed and unvarying definition of 'necessity' as used in the statute can be given. What may be a necessity in one place may not be in another. * * * Every case must stand on its own peculiar facts and circumstances." (134 Va., at page 723.)

Referring specifically to a proper construction of the statute, this was said: "The statute should have a reasonable construction so as to promote the end for which it was enacted, and thus cover every class of labor at every trade, calling or other business not excepted by the statute. The statute should also be construed in the light of the age in which we live, recognizing the fact that there are things which the community regard as necessary that were not necessities when the statute was first enacted; that, to escape the penalty pronounced by the statute, the labor performed must be of the class excepted by the statute, or recognized by the community as a necessity, and that what is or is not a necessity is generally a question of fact for the jury and not one of law for the court." (134 Va., at page 726).

The above statements were approved in *Lakeside Inn Corp.* v. *Commonwealth*, 134 Va. 696, 114 S. E. 769; *Crook* v. *Commonwealth*, 147 Va. 593, 136 S. E. 565, 50 A. L. R. 1043; *Williams* v. *Commonwealth*, 179 Va. 741, 20 S. E. 2d 493; *Francisco* v. *Commonwealth*, 180 Va. 371, 23 S. E. 2d 234.

In endeavoring to give a more practical definition of "necessity", Mr. Justice Eggleston in *Francisco* v. *Commonwealth, supra*, 180 Va., at pages 379 and 380, says:

"The work of necessity covered by the exception in the statute is not merely one of absolute or physical necessity, not merely something required to furnish physical existence or safety of person or property, but embraces as well all work reasonably essential to the economic, social or moral welfare of the people, viewed in the light of the habits and customs of the age in which they live and of the community in which they reside. While the word necessity is elastic and relative, and should be construed with reference to the conditions

under which we live, the elasticity should not be extended so far as to cover that which is merely desirable and not reasonably essential."

The violation of § 18-329 is made a criminal offense and the same rules apply to it in prosecutions thereunder as to other criminal cases. "The accused is presumed to be innocent until his guilt is established, and the burden is upon the Commonwealth to prove his guilt beyond a reasonable doubt. There is no burden on the accused to prove even by a preponderance of the evidence that the work done by him on Sunday was a work of 'necessity or charity.' * * * The burden is on the Commonwealth to prove every element of the offense." *Pirkey Bros.* v. *Commonwealth, supra,* 134 Va., at page 730; *Lakeside Inn Corp. v. Commonwealth, supra,* 134 Va., at page 705. That is, the burden is on the Commonwealth to establish beyond a reasonable doubt that the accused was engaged in or employed his servants in labor or other business on a Sabbath day, and that such labor or other business was not a work of necessity, or not a work of charity. *Williams* v. *Commonwealth, supra,* 179 Va., at page 746.

In 50 Am. Jur., Sundays and Holidays, § 32, page 828, this is said:

"The settled rule that in a criminal prosecution the burden is on the state to prove beyond a reasonable doubt every element of the offense charged is applicable to prosecutions for violations of Sunday laws. In accord with the usual principle that where a negative proposition is an essential element of the crime charged, the burden is on the state to prove the charge, in prosecutions for violations of Sunday laws forbidding all work or labor on that day except in cases of necessity or charity, it is incumbent on the state to prove that the acts done were not works of necessity or charity within the exception of the statute. There is no burden on the accused to prove, even by a preponderance of the evidence, that the work done by him on Sunday was a work of 'necessity or charity.' "

To the same effect see *Pettit* v. *Roanoke,* 183 Va. 816, 818, 33 S. E. 2d 633; 83 C. J. S., Sunday, § 21, page 843; 18 M. J., Sundays and Holidays, § 10, page 57.

There is nothing immoral in selling food and groceries on Sunday or any other day. In the absence of statute, the performance of acts of labor and the conduct of a legitimate business on Sunday are not unlawful. Whether or not the act may be a matter of necessity is dependent upon the circumstances of the particular case. It may be a necessity in one community and not a necessity in another. It is a

matter of common knowledge that with the increase of population in this country, coupled with the demands of economic, industrial and social developments, things which were not necessities a few years ago have come to be necessities in later years.

The tendency of the public in this State respecting Sunday observance is reflected by various legislative enactments. The statute under review has been amended a number of times, specifically excepting certain things from its provisions. In 1916, Acts 1916, page 751, it was provided that, "the delivery on the Sabbath day of ice cream manufactured on some other day than the Sabbath day shall be construed as a work of necessity."

In § 4570, Code 1919, the proviso with reference to the delivery of ice cream was omitted because deemed unnecessary. In the revisor's note, it is stated that it was not thought advisable "to make one special exception which might lead to the construction that many of the acts were forbidden which have never been held to be within the purview of the statute." However, notwithstanding the omission of that proviso, there was added another excepting "furnaces, kilns, plants and other business of like kind that may be necessary to be conducted on Sunday."

In 1932, Acts 1932, page 596, there was added a proviso that the section should not apply to "the sale of gasoline or any motor vehicle fuel, or any motor oil or oils;" and in 1954, Acts 1954, Chapter 131, the proviso was extended to include "the operation of motion picture theatres." Code § 18-329.

Courts of other jurisdictions throughout the years have held many acts to be works of necessity under the language of the particular statutes involved or under existing circumstances and conditions of society, where performed, and condemned many other Sunday acts for various reasons. 50 Am. Jur., Sundays and Holidays, § 17, *et seq.*, pages 816, *et seq.;* 83 C. J. S. Sunday, § 17, *et seq;* pages 829, *et seq.* The apparent conflict in the decisions is largely due to the particular facts of the case, and the language of the statute involved and the rules of law adopted.

We think, however, that the modern tendency and great weight of authority are in accord with the reasons and principles stated in *Pirkey Bros.* v. *Commonwealth, supra.* In the determination of the present case we are guided and governed by the long settled principles therein set out.

■ Considering the evidence, with the above rules of law in

mind, we find that the evidence shows only that defendant's store was open for business and his employees engaged in selling groceries on Sunday, June 12, 1955. There was no evidence, no facts or data submitted to prove that such labor was not a work of necessity, that is, work not "reasonably essential to the economic, social or moral welfare of the people, viewed in the light of the habits and customs of the age in which they live and the community in which they reside."

On the other hand, the evidence showed that a considerable number of the eighty-six grocery stores in Warwick had kept open for business on Sunday, June 12, 1955, had been so operated on Sundays for many years prior thereto, and that the law officers of the City were familiar with those facts. This evidence did not strengthen the case of the Commonwealth. The Commonwealth argues it showed that the needs of the community could have been filled on weekdays and on Sundays by grocery stores other than those of the defendant, while the defendant contends the operation of the other stores warranted the assumption of a necessity affecting the economic and social welfare of the people of Warwick, viewed in the light of their present habits and customs, and that there can be no justification for excluding the defendant from an equal opportunity to relieve the necessity. In the absence of material relevant evidence, the correct conclusion is merely speculative.

We are not unmindful of the respect justly due to the verdict of a jury; but their verdict cannot be sustained unless it is supported by some evidence. The evidence must go further than create a mere suspicion or probability of guilt. There must be credible evidence to arrive at a conclusion of guilt beyond a reasonable doubt. Here, the Commonwealth has signally failed to carry the burden of proving that the work performed by the defendant on Sunday, June 12, 1955, was not a necessity within the meaning of the statute. It follows that the verdict of the jury was without evidence to support it.

[■] In view of the above conclusion, we do not deem it necessary to discuss other errors assigned, except the contention of the defendant, raised for the first time in this Court, that § 18-329 violates the Fifth and Fourteenth Amendments to the Constitution of the United States. That contention is based on the argument that the exemption of "other work of necessity or charity" in the statute admits of such arbitrary interpretation as to make the provision vague, indefinite, and dependent upon the religious philosophy of the par-

ticular judge or jury trying the case. Such contention has been denied in *Pirkey Bros.* v. *Commonwealth, supra,* 134 Va., at pages 713, 724, 725, upon principles which have been approved in decisions from this and other jurisdictions. (*Francisco* v. *Commonwealth, supra,* 180 Va., at page 371).

"The Fifth Amendment is a limitation upon the powers of Congress, while the Fourteenth Amendment is a limitation upon the powers of the states." 12 Am. Jur., Constitutional Law, § 567, page 258, and cases cited.

"Frequent attacks on the validity of Sunday laws have been launched, but the general tendency of the courts has been to sustain their constitutionality." 50 Am. Jur., Sundays and Holidays, § 5, pages 803, *et seq.,* and cases cited.

"The right of the state to pass a Sunday law is not open to question. The enactment of Sunday regulations is an exercise of the police power, and such regulations are constitutional in the same manner and to the same extent as other legislation legitimately resting on that power; * * *." 83 C. J. S., Sunday, § 3 c, page 802, and cases cited.

For the reasons stated, the judgment complained of is reversed, the verdict of the jury set aside, and the proceeding dismissed.

*Reversed and dismissed.*