*J. E. Pottle, solicitor-general,* contra.

---

SEALE *v.* THE STATE.

1. The decision in *Hennington* v. *State,* 90 *Ga.* 396, as affirmed by the Supreme Court of the United States in Hennington *v.* Georgia, 163 U. S. 299, is, upon review, adhered to and reaffirmed.
2. The evidence authorized the verdict, and no sufficient reason appears for reversing the judgment.

              Argued October 17,—Decided November 10, 1906.

Indictment for running freight-train on Sunday.   Before Judge Kimsey.   Habersham superior court.   September 12, 1906.

Seale was superintendent of transportation of the Southern Railway Company, a common carrier chartered under the laws of Virginia, which has a line of railroad running through the States of Virginia, North Carolina, South Carolina, and into and through the State of Georgia.   He was indicted, as such superintendent, for having, on Sunday, the 24th ·day of May, 1903, run a freight-train ·on said road in Habersham county.   The evidence introduced on the trial showed, that Seale was superintendent as stated, that a train of the Southern Railway Company was run on its railroad in Habersham county at the time alleged, that the train was an inter-.state train, running from Greenville, South Carolina, to Atlanta, ·Georgia, and carrying frieght from one State into another; and that it carried only dead freight, and none of the classes of freight ⁻which the statute of Georgia authorizes to be carried on Sunday. The Penal Code, § 420, provides as follows:   "If any freight-train, ·excursion train, or other train·than the regular trains run for the carrying of the mails or passengers, shall be run on any railroad on the Sabbath day, the superintendent of transportation of such rail-road company, or the officer having charge of the business of that ·department of the railroad, shall be liable to indictment in each ·county through which such train shall pass, and shall be punished as for a misdemeanor.   The foregoing provisions shall not extend to— 1. A train which has one or more cars loaded with live stock, and ⁻which is delayed beyond schedule time.   Such train shall not be re-·quired to lay over on the line of road during Sunday, but may run ·on to the point where, by due course of shipment or consignment, ⁻the next stock-pen on the route may be, where such animals may be fed and watered, according to the facilities usually afforded for ,such transportation.   2. A·freight-train running over a road on· Saturday night, if the time of its arrival at destination, according to the schedule by which it started on the trip, be not later than ·eight o'clock Sunday morning.   3. Special fruit, melon, and vege-table trains the cars of which contain no other freight except per-ishable fruits, melons, vegetables, fresh fish, oysters, fresh meats, live stock, and other perishable goods of a like character, and which trains shall be loaded and leave the station from which they start in this State before the hour of midnight on Saturday night pre-⁻vious to the Sunday on which they are operated.   No company :shall be compelled to run the trains mentioned in this paragraph,

and all freight-trains or cars thus loaded and coming into this State may run to any point of destination in this State or continue their run through the State on Sunday." This was amended by the act of 1897 (Acts 1897, p. 38), as follows: "The foregoing provisions shall not extend to . . trains on railroads where the line of said railroad begins and ends in another State, and does not run a distance greater than three miles through this State." The word thirty was substituted for the word three in the foregoing amendment, by the act of 1899 (Acts 1899, p. 88; Van Epps' Code Supp. § 6749).

On the trial, the defendant requested the court to charge as follows: (1) "I charge you that if you believe, under the evidence, the Southern Railway Company was an interstate railroad, or common carrier doing an interstate business, and that the train in question was one carrying freight from one State into another; and if you further believe that the statute of Georgia, under which defendant is indicted, if enforced, would have the effect to hinder such interstate business being done by an interstate railroad, then I charge you that the statute of the State is inoperative, because it would thereby affect interstate commerce, and contravene the commerce clause of the Federal statute. (2) If you believe, from the evidence in this case, that the defendant was superintendent of transportation of the Southern Railway Company, and that the Southern Railway Company was an interstate railroad, doing interstate business, and that a freight-train being pulled by engine number 368 left Greenville, S. C., destined for a point in another State, and in order to reach such point had to pass through the county of Habersham, and in so doing ran a part of the distance in said county on Sunday, I charge you that the statute of Georgia regulating the running of freight-trains on Sunday is inapplicable to such interstate trains, and it would be your duty to find the defendant not guilty. (3) If you believe, from the evidence, that the Southern Railway Company at the time the freight-train in question was run was an interstate railroad, and common carrier, and at the time in question was carrying freight from one State into another in the regular discharge of its duty as such common carrier, then I charge you that § 420 and 421 of the Penal Code of Georgia, as amended by the Acts of 1897, page 38, and 1899, page 88, are not applicable to the case at bar. Such interstate railroad

is not subject to a State statute which in any way hinders or interferes with the interstate commerce being done thereby. The statute as to such interstate railroads contravenes section 3 of article 1 of the federal constitution, which provides that Congress shall have exclusive power to regulate commerce with foreign nations and among the several States." The court refused to charge as requested. The defendant was convicted, and he moved for, a new trial, upon the grounds: (1) That the verdict is contrary to evidence; (2) that the verdict is contrary to law; and (3) that the court erred in refusing to charge as requested. The court overruled the motion, and the movant excepted.

John J. Strickland, for plaintiff in error, cited: Constitution of Ga., art 1, sec. 4, par. 1 (Civil Code, §5732) ; Acts 1897, p. 38; Acts 1899, p. 88; 107 Ga. 623; 116 Ga. 245,250; 95 U. S. 497; 114 U. S. 630; 118 U. S. 573; 22 U. S. 231; 82 U. S. 232; 97 U. S. 574; Rev. Stat. U. S. § 5258; 125 U. S. 465; 95 U. S. 465; 120 U. S. 489, 490; 177 U. S. 326; 163 U. S. 299; Prentice & Eagan on Commerce Clause of Fed. Const. 61; 116 U. S. 446; 120 U. S. 489; 128 U. S. 129; 139 U. S. 104; 153 U. S. 289.

W. A. Charters, solicitor-general, contra, cited: 90 Ga. 396; 163 U. S. 299; 121 Ga. 741; 171 U. S. 101; 179 U. S. 328; 184 U. S. 540.

ATKINSON, J. In Hennington v. State, 90 Ga. 396, it was held that §4578 of the Code of 1882 (Penal Code §420), making it a misdemeanor to run a freight-train upon any railroad in this State on the Sabbath day, was a regulation of internal police, and not a regulation of commerce, and was, therefore, not in conflict with the provision in the constitution of the United States delegating to Congress the power to regulate commerce among the several States. This decision was rendered in 1892, and, upon writ of error to the Supreme Court of the United States, the ruling was affirmed by that court. Hennington v. State of Georgia, 163 U. S. 299. It was said by that court that there is nothing in the legislation in question that suggests that it was enacted with the purpose to regulate interstate commerce, or with any other purpose than to prescribe a rule of civil duty for all who on the Sabbath day were in the territorial jurisdiction of the State; that while the statute affects interstate commerce in a limited degree, it is not for that reason a needless intrusion upon the domain of federal jurisdiction, nor

strictly a regulation of interstate commerce, but is an ordinary police regulation, designed to secure the well-being and promote the general welfare of the people of the State, and is not invalid by force alone of the constitution of the United States, and that it is to be respected in the courts of the Union until superseded and displaced by some act of Congress passed in execution of the power granted to it by the constitution. There has been no legislation by Congress on this subject, and therefore the ruling of this court, as affirmed by the Supreme Court of the United States, is the law of the land at the present time. We have been requested to review and overrule the decision of this court, above referred to. We decline to do this, for two reasons: (1) We are entirely satisfied with the reasoning of the learned Chief Justice who rendered the opinion in that case; (2) the conclusion reached by him was affirmed by the Supreme Court of the United States; and until that court sees fit to overrule the decision made by it, we are bound to follow it.

Since that decision was rendered, an act has been passed by the General Assembly (Acts 1897, p. 38) declaring that the law prohibiting the running of freight-trains on Sunday should not apply to a train carrying freight on a line of railroad which begins and ends in another State, and does not run a greater distance than three miles in this State; and the amending act has been amended by extending the distance in this State to thirty miles (Acts 1899, p. 88). It was argued that even if the *Hennington* case was correctly decided, it is controlling only upon the statute as it existed at the time that decision was rendered, and that the effect of the amendatory acts just referred to is to make a discrimination against those railroads whose lines in Georgia are longer than thirty miles. It is unnecessary for us to determine in the present case whether the effect of these amendatory acts is to bring about such a discrimination as would either render the amending acts void, or have any effect upon the original statute, or in any way impair the force of that statute with reference to trains not embraced within the terms of the amending acts. A careful examination of the assignments of error which are contained in the motion for new trial discloses that none of them were sufficient to raise a question of this character for decision by the lower court. The questions decided by the lower court were those which were raised by the three requests to charge which are embodied in the statement of facts, and the general

grounds.　It is clear that the only question raised in the first and second requests is whether the statute of Georgia under which the accused was indicted is applicable to an interstate train.　In the third request reference is made to the amending statutes above referred to, but the effect of the request is simply to raise the question as to whether the statute as amended is such a regulation of interstate commerce as would be rendered void when attempted to be applied to an interstate train.　There is nothing in the request which, properly construed, can in any view raise the question as to the validity of the amending acts, or as to the effect of the amending acts upon the original act.　The judge was simply requested to instruct the jury that the law of Georgia as it now stands (that is, the section of the Penal Code, as amended by the two acts above referred to) was a regulation of interstate commerce, and therefore void so far as it embraced an interstate train.　Whether the statute as amended was obnoxious to any provision of the State constitution or any provision of the constitution of the United States, other than the commerce clause, is not involved at all in any question made by the present record.　If the section of the Penal Code as it stood at the time that the *Hennington* case was decided was not a regulation of interstate commerce, there was nothing in the amendatory acts which would change its character in this respect.　The evidence was sufficient to authorize the verdict, and we see no reason for reversing the judgment refusing to grant a new trial.

*Judgment affirmed.　All the Justices concur.*