27589.   ROGERS *et al.* v. THE STATE.

Decided October 9, 1939.

*C. E. Kay,* for plaintiffs in error.

*Roy Leathers, solicitor-general,* contra.

MacIntyre, J.   The defendants, Rogers, Brewster, and Heager, were convicted of pursuing their business or work of their ordinary calling on the Lord's day, the same not being a work of necessity or charity.   They moved for a new trial, which was refused, and they excepted.   Omitting the formal parts, the indictment charged the offense of misdemeanor, "for that the said C. H. Rogers, M.. R. Brewster, and J. R. Heager, in the county aforesaid, on the 6th day of September in the year of our Lord nineteen hundred and thirty-eight, unlawfully and with force and arms did pursue their business and work of their ordinary calling on the Lord's day, to wit, the operation of a motion-picture theatre in Avondale Estates in the county and State aforesaid, and said operation of said theatre was not work of necessity or charity."   The evidence was to the effect, that the Southern Theaters Incorporated (which will hereafter be referred to as the moving-picture corporation) turned over to the Scottish Rite Hospital for Crippled Children (hereafter referred to as the hospital) the entire proceeds from the Sunday moving-picture performances, and the hospital refunded to the motion-picture corporation the expenses of operating the moving pictures and kept for the hospital the net proceeds; that the defendants were operators or employees of the moving-picture corporation, doing the same kind of work on Sunday as they did on week days, and were paid for their services out of the moneys set apart as operating expenses; and that they were paid for their day's work on Sunday the same wages they received for any other day's work.

It has been well said: "It is unnecessary that we discuss the propriety of the enactment of the statute prohibiting a breach of the Sabbath. This is a Christian nation. The observance of Sunday is one of our established customs. It has come down to us from the same Decalogue that prohibited murder, adultery, perjury, and theft. It is more ancient than our common law or our form of government. It is recognized by constitutions and legislative enactments, both State and Federal. On this day legislatures adjourn, courts cease to function, business is suspended, and nationwide our citizens cease from labor. The observance of the Sabbath is regarded as essential to the proper upbuilding of the mental and physical, as well as the moral life of a great people. Laws and ordinances respecting its observance are clearly within the genius of our institutions and the spirit of our national life." Marchetti's Law of Stage, Screen, and Radio, 347, § 163. In Crook v. Commonwealth, 147 Va. 593, 597, 603 (136 S. E. 565), the Supreme Court of Appeals of Virginia, in reference to a statute similar to the one in question, quoted the following language with approval: "Its aim is to prevent the physical and moral debility which springs from uninterrupted labor, and in this respect it is a beneficent and merciful law. It gives one day to the poor and dependent from the employment of which no capital or power is permitted to deprive them. It is theirs for repose, for social intercourse, for moral culture, and, if they choose, for divine worship." In same opinion that court adopted the following charge of the trial court: "The purpose of the law in prohibiting work from being done on Sunday is to give the public a rest from its customary labor, for the benefit of both the moral and physical nature of mankind, and not for the purpose of enforcing the beliefs or tenets of any religious creed or denomination." In *Hennington* v. *State,* 90 *Ga.* 396 (17 S. E. 1009), our Supreme Court through Chief Justice Bleckley said: "It is not only unlawful, but penal, for any person whatsoever to 'pursue their business or work of their ordinary calling upon the Lord's day, works of necessity or charity only excepted.' . . This prohibition upon Sunday labor was already in force when the Code was adopted, and dates back to the year 1762. The penalty prescribed by the colonial statute has been changed, but in other respects that statute has been operative continuously since it was enacted. There can be

no well-founded doubt of its being a police regulation, considering it merely as ordaining the cessation of ordinary labor and business during one day in every week; for the frequent and total suspension of the toils, cares, and strain of mind or muscle, incident to pursuing an occupation or common employment, is beneficial to every individual, and incidentally to the community at large, the general public. Leisure is no less essential than labor to the well-being of man. Short intervals of leisure at stated periods reduce wear and tear, promote health, favor cleanliness, encourage social intercourse, afford opportunity for introspection and retrospection, and tend in a high degree to expand the thoughts and sympathies of people, enlarge their information, and elevate their morals. They learn how to be, and come to realize that being is quite as important as doing. Without frequent leisure, the process of forming character could only be begun; it could never advance or be completed. People would be mere machines of labor or business—nothing more."

In some States performances or exhibits for charity or benevolence are by statute expressly permitted to be given on Sunday, the proceeds to be donated to some worthy charity; and it has been held in at least some of these States that the word "proceeds" means "that which finally results or proceeds from the entertainment, taking into account not only that which is received, but that which is incidentally and properly laid out. The proceeds are the net returns after the payment of necessary expenses." Commonwealth v. Alexander, 185 Mass. 551 (70 N. E. 1017, 1018). We have no such statute in this State. The only statute in Georgia relative to the question under investigation is as follows: "Any person who shall pursue his business or the work of his ordinary calling on the Lord's day, works of necessity or charity only excepted, shall be guilty of a misdemeanor." Code, § 26-6905. There being no statute in this State authorizing a performance or exhibit for charity, the proceeds of which are to be donated to charity, if we follow the line of reasoning in Bucher v. Fitchburg Railroad, 131 Mass. 156, quoted in Bucher v. Cheshire Railroad Co., 125 U. S. 555, 579 (8 Sup. Ct. 974, 31 L. ed. 795), and the reasoning in *Trustees of the Academy of Richmond County* v. *Bohler,* 80 *Ga.* 159 (7 S. E. 633), *Thompson* v. *Atlanta,* 178 *Ga.* 281 (172 S. E. 915), and *Hicks* v. *Dublin,* 56 *Ga. App.* 63, 66

(191 S. E. 659), the act which is exempt under the Code, § 26-6905, is an act done which is itself charitable, but not the act or acts of a detached business from which support for the charitable hospital is to be derived. To illustrate: could the charitable hospital own and operate with its own funds a furniture store on all days including Sunday, selling furniture to the general public, even though all of the proceeds were to go to it as a charitable institution and these proceeds were to be used for charitable purposes only? We think not. Could a large department store, such as Rich's Incorporated, here in Atlanta, make the same arrangement with a charitable hospital as the moving-picture show has made in this case, throw open wide its doors on Sunday, and invite the public to trade in like manner as they trade on any other day in the week, and thus in the name of charity violate this statute? And, to carry the illustration to an extreme, could the charitable hospital make the same arrangement as it has made in this case with every business enterprise in the City of Decatur, Georgia, and throw open their doors to the public for the transaction of business on Sunday in like manner as they do on week days, provided only that they give the net proceeds to the hospital? We think not. Is it not better to go back to the reasoning in *Trustees* v. *Bohler,* and *Thompson* v. *Atlanta,* supra, and say that the act done or the enterprise operated, to be exempted under the Code, § 26-6905, prohibiting the violation of the Sabbath day, must itself be charitable, but that the acts done or businesses operated which are detached from the charitable hospital or enterprise from which support is to be derived are not exempt.

It is not contended that the running of the picture show on Sunday was a work of necessity. Therefore the only questions which remain are: would the evidence authorize the jury to find that the defendants pursued their business or the work of their ordinary calling on the Lord's day, and was such business or work one of "charity"? This is not a case of the State against the moving-picture corporation, charging it with doing business on Sunday in violation of the statute, nor is it a case seeking to enjoin the moving-picture corporation; but it is a case against three persons who are operators or employees, charging them with pursuing the work of their ordinary calling on the Lord's day, which work, it was alleged, was not a work of necessity or charity. As to

the defendants individually, just exactly what was the charitable act or work they were doing? We have always understood that the word "charity" purported giving rather than receiving. Thus the evidence authorized a finding that the defendants as individuals were working for pay, and not for charity. Certainly one of the potent reasons for the statute was, as far as possible, to protect the employee in his right to rest from labor on the Sabbath day, and no good reason is apparent for denying that privilege to the ticket seller, usher, operator, and other employees in hundreds of other picture shows in this State, while granting it to employees in various other lines of employment throughout the State. Under the evidence the defendants were receiving their pay for their Sunday work from a business enterprise detached from the charitable enterprise the acts of which were themselves charitable. The Code, § 26-6905, prohibits the violation of the Sabbath day in simple words of ordinary meaning and significance; and let us not put any strained construction upon them, but let us give them their ordinary meaning, and when we do so we arrive at the conclusion that the jury were authorized to find that the defendant operators or employees were doing the same kind of work on Sunday that they did on the other six days of the week; that they were receiving the same pay for their work on Sunday that they received for their work on each of the other days of the week; and that the work they were doing on the Lord's day was work of their ordinary calling. The operators or employees were not themselves engaged in any act which was itself charitable. They were receiving all and giving nothing. Charity connotes giving rather than receiving. If they were operators and employees of a detached business which was not engaged in any act which act was itself charitable, but were operators of a detached enterprise which gave the proceeds of its business to the support of a charitable institution, they would not be exempt under the Code, § 26-6905, on the theory that their work was a work of charity.

If the existing law is in any way unsatisfactory or unjust, the remedy is by way of application to the legislature to modify or annul it, not by application to the court, whose sole duty is to construe it and say what the legislature meant by passing it. Thus we think the jury were authorized to find that this beneficent statute has been violated.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*