FOREHAND, Solicitor-General, *v.* MOODY *et al.*

No. 15258. NOVEMBER 15, 1945. REHEARING DENIED DECEMBER 3, 1945.

172

*W. C. Forehand, Solicitor-General* and *R. D. Smith,* for plaintiff.
*John T. Ferguson* and *Robert R. Forrester,* for defendants.

HEAD, Justice. (After stating the foregoing facts.) It is very strongly argued and insisted in the brief for the plaintiff in error that the Code, § 26-6905, as follows, "Any person who shall pursue his business or the work of his ordinary calling on the Lord's day, works of necessity or charity only excepted, shall be guilty of a misdemeanor," does not contain all the provisions of the act approved March 4, 1762 by the Colonial Legislature; and that, the act of 1762 not having been repealed, the statute should contain other provisions to prohibit certain sports and pastimes on the Lord's day. It is not essential that any ruling be here made on this contention of the solicitor-general. His petition was based on the provisions of the Code section above cited, and his petition, on the information of certain citizens, was properly brought and alleges a cause of action for an injunction against the operation of a picture show in the Town of Omega on the Sabbath day.

In *Rose Theatre Inc.* v. *Lilly*, 185 *Ga.* 53 (supra), this court sustained the trial court in overruling a general demurrer to a petition of the solicitor-general under allegations substantially the same as in this case. The effect of overruling the general demurrer to the petition was to hold that the petition alleged a cause of action, and, if the evidence supported the allegations of the petition, an injunction should be granted. The ruling in *Rose Theatre Inc.* v. *Lilly*, supra, was followed in *Atkinson* v. *Lam Amusement Company*, 185 *Ga.* 379 (supra), and *Rosser* v. *Lam Amusement Company*, 185 *Ga.* 725 (supra).

Two questions are presented in this case for consideration and determination: (1) Are the defendants, Moody and Rogers, each pursuing his business or the work of his ordinary calling on the Lord's day in the operation of a picture show in the Town of Omega? (2) Is the operation of the picture show in the Town of Omega on the Lord's day a work of necessity or charity?

The defense in this case is based squarely on the theory that the defendants are not pursuing their business or the work of their ordinary calling on the Lord's day, and that the operation of the picture show is a work of charity. The evidence shows that the defendant Moody had been engaged for some time prior to March 10, 1945, in the operation of a picture show in the Town of Omega on week days only; that on March 10, he made a contract with

Rogers, and thereafter both Rogers and Moody operated a picture show in Omega on Sunday; and that Moody continued to operate such show on week days.

Moody's evident purpose in his contract with Rogers was to escape the prohibition against his pursuing his business or the work of his ordinary calling on the Lord's day. Their contract purports to be a lease by Moody to Rogers of the picture-show building and equipment upon payment of $20 per Sunday plus 25 percent of the gross receipts as rental and for *personal services.* The evidence further shows that Moody was present each Sunday at the operation of the picture show. He explained his presence by saying: "I had a lot of valuable equipment there. . . You don't want to turn it over to a fellow that is green help. If you see something going wrong you could do something about that." This testimony shows that Moody was present at the picture shows on Sunday to protect and conserve his property, which, unquestionably, as the owner and operator of the picture show on week days, would be a part of his business or the work of his ordinary calling. Moody's further evidence—"Yes, I show advertisements on Sunday shows. I contract for those advertisements. I am paid for these advertisements on business establishments"—indicates that he was exercising the same authority as to the showing of advertisements on Sunday that he could exercise on week days, and that he was receiving the same benefit from such advertisements on Sunday, in so far as compensation was concerned, as he received on week days. It was not necessary that the solicitor-general show that Moody discharged all of his business or the work of his ordinary calling on the Lord's day. He did pursue a substantial part of his business or the work of his ordinary calling; and, unless it be shown that the operation of the picture show on Sunday was a work of necessity or charity, Moody was violating the Code, § 26-6905.

The evidence shows that Rogers does not operate a picture show on any day but Sunday. It is a well-settled principle of law that an act done on one Sunday alone is not pursuing one's business or the work of his ordinary calling on the Lord's day. *Sanders* v. *Johnson,* 29 *Ga.* 526; *Ellis* v. *State,* 5 *Ga. App.* 615 (63 S. E. 588). Where such acts are repeated on successive Sundays, they become a part of his business or the work of his ordinary calling.

*Reed* v. *State,* 119 *Ga.* 562 (46 S. E. 837); *Scandrett* v. *State,* 124 *Ga.* 141 (52 S. E. 160).

The evidence of both Moody and Rogers shows that the usual and ordinary procedure was followed on the Sabbath day as on week days, that tickets for admission to the picture show were sold and money received at the same charge made for the shows on week days; that personnel was employed and paid, and Moody participated in the employment of certain employees; and that Rogers, under his contract with Moody, paid sums pursuant to the agreement. Every substantial detail of the business as operated by Moody on week days was continued on Sunday, even to the showing of advertisements, and previews of pictures that were to appear in the theater the following week. When it was shown that the defendant Rogers on five consecutive Sundays participated in the operation of a picture show in the Town of Omega, it was shown that he was carrying on his business or the work of his ordinary calling on the Lord's day. *Reed* v. *State, Scandrett* v. *State,* supra. As in the case of the defendant Moody, if the defendant Rogers is to escape the prohibition of the statute (Code, § 26-6905), it must be shown that the operation of the picture show is a work of charity, since it is nowhere contended or shown by the defendants that the operation of such show is a work of necessity.

Rogers testified as to the gross receipts and the expenses incurred in each Sunday's operation. The total for the five Sundays was $146.15, and the total expenses were $131.88, which would leave a net profit on the five Sundays' operations of $14.27. This view of the evidence is the most favorable to the defendants. The contract between Rogers and Moody provides for a $20 payment for each Sunday's operation, which would be $100, plus 25 percent of the gross receipts, or $36.53. Rogers testified to paying $6 per Sunday for help employed, and for five Sundays this would be $30. The total expenses would then be $166.53, leaving a net operating loss for the five Sundays of $20.38. Moody testified that he was losing $10 per Sunday on each Sunday's operation, or a total of $50, making a loss by Rogers and Moody of $70.38 on the five Sundays' operations. Other evidence of the defendant Moody apparently contradicts his testimony that he is losing $10 on each Sunday's operation. Moody's evidence shows that the

picture show may be operated for a flat rental of $20 per Sunday, which would make the 25 percent of gross receipts result in a profit to him rather than a loss.

If the sum of $14.27 was available for charitable purposes and uses, this amount would be less than 10 percent of the gross receipts. The supplemental contract entered into on May 26, substituting Mrs. Blalock for Rogers to receive the net proceeds from the operations on Sunday, provides that the contract between Rogers and Moody is to be continued, and for the payment of expenses incurred by Rogers in the operation of the picture show. Under this contract Mrs. Blalock could only receive a percentage of the gross receipts for the benefit of veterans at Finney General Hospital. The payment of a percentage of gross receipts does not constitute charitable uses and acts within the meaning of the Code, § 26-6905, as held by this court in *Thompson* v. *Atlanta,* 178 *Ga.* 282 (172 S. E. 915), "To devote a part of the proceeds of such business to charity does not make the business a work of charity."

The word "charity" as used in § 26-6905 means giving and not receiving. Thus charity, in the sense of the statute, is not the giving of a small percentage of the proceeds of the business to some charitable use, as might be the case if the operator of a grocery store opened his business on Sunday and gave a percentage of the gross receipts to some charitable use or purpose. In such an instance the grocer could not escape the prohibition of the statute. However, if the grocer opened his place of business on Sunday and actually gave groceries to hungry and distressed persons, where by some calamity, as a flood or fire, such persons were without the necessities of life, such an act on the part of a grocer would undoubtedly be charity within the meaning of the statute. *Rogers* v. *State,* 60 *Ga. App.* 722 (4 S. E. 2d, 918).

If such a colorable manipulation as is here shown should have the sanction of this court as being within the law of this State, then the provisions of the Code, § 26-6905, would be meaningless and in effect repealed, not by acts of the General Assembly, but by the courts of this State.

The prohibition against a person carrying on his business or the work of his ordinary calling on the Lord's day has been continuously in effect since the adoption of the statute on March 4, 1762,

by the Colonial Legislature. See *Hennington* v. *State,* 90 *Ga.* 396 (17 S. E. 1009); *Hayden* v. *Mitchell,* 103 *Ga.* 431 (30 S. E. 287). The history and wisdom of this statute was discussed by Chief Justice Bleckley in the case of *Hennington* v. *State,* supra where, after discussing the history of the statute, he said in part: "Courts are not concerned with the mere beliefs and sentiments of legislators, or with the motives which influence them in enacting laws which are within legislative competency. That which is properly made a civil duty by statute is nonetheless so because it is also a real or supposed religious obligation; nor is the statute vitiated, or in any wise weakened, by the chance, or even the certainty, that in passing it the legislative mind was swayed by the religious rather than the civil aspect of the measure. . . Opinions may differ, and they really do differ, as to whether abstaining from labor on Sunday is a religious duty; but whether it is or not, it is certain that the legislature of Georgia has prescribed it as a civil duty." Following the reasoning of Chief Justice Bleckley, any personal view that may be entertained by the writer or by any member of this court as to the operation of a picture show on Sunday is not controlling here. The legislative branch of our government has spoken. A person must not carry on his business or the work of his ordinary calling on the Lord's day, unless it be a work of necessity or charity. Approval of such a scheme as is shown here, to defeat the evident purposes of the statute, would mean that every business establishment in the City of Atlanta could be operated on the Sabbath day, and the operators could avoid criminal prosecution by showing that a small percentage of the gross receipts from such business was given to some charitable use or purpose.

The only evidence of charity in this case is the contract provision that the net proceeds will be delivered to Mrs. Blalock for the benefit of disabled veterans at Finney General Hospital. No charitable act is shown on the five Sundays in which the picture show was operated. The evidence is that Rogers gave a check to a Mrs. Bass to be used in the operation of a lunch room at Crossland. It is not shown that this lunch room is a worthy object of charity. Conceding it to be such a worthy object, the check for $7.20 given by Rogers was not cashed by Mrs. Bass, because, as she stated to him, she was afraid to use it for fear she would have to

go to court. Under the evidence in this case, the operation of the picture show on the five Sundays was not an act of charity. No amount from the receipts was given for any charitable use or purpose. As to the operations after the contract entered into on May 26, in which Mrs. Blalock was made a party to receive the net proceeds, if the contract should be actually complied with, this would not, for the reasons heretofore stated, be such a charitable act or giving as would authorize the operation of this picture show on the Sabbath day in the Town of Omega.

It has been insisted that the case of *Albany Theatre Inc.* v. *Short,* 173 *Ga.* 121 (159 S. E. 688), is in point and controlling in this case. This contention is unsound for two reasons: (1) That case is substantially different on its facts from the one now before the court. There, it was contended by the defendants that the picture show was to be operated by the American Legion, that no tickets were to be sold or admission charged, that receipts from such operation would arise solely from contributions made by persons attending the exhibition, and that the American Legion was obligated to pay only the expenses that could be actually shown; which is not true in this case. The defendant Moody may have, and probably did, receive a profit on the five Sundays' operations shown. In discussing the evidence in the *Albany Theatre* case, Chief Justice Russell said that a finding would have been authorized that the sole purpose of the exhibitions was to raise funds for aiding under-privileged children. Under the evidence in this case, it is clearly not the sole purpose of the defendants to raise money for the relief of veterans at Finney General Hospital, when it is shown that Moody is receiving a flat rental, plus a percentage of the gross receipts, plus the compensation for advertising which is shown on Sunday, and is showing previews or advertisement on Sunday of pictures to be shown the following week. Clearly the purpose of a preview of a picture to be shown in the future is to invite and encourage attendance at the theater, and to increase the profits of the operator thereof. (2) *Albany Theatre Inc.* v. *Short,* supra, would not be controlling here, had it been in point on the facts, since it was not a full-bench decision, and would therefore have to yield to the cases of *Rose Theatre Inc.* v. *Lilly, Atkinson* v. *Lam Amusement Co., Rosser* v. *Lam Amusement Co.,* and *Thompson* v. *Atlanta,* supra, which are full-bench

decisions by this court, and in accord with the rulings made in this case.

It was error to deny the injunction, and the judgment of the lower court is therefore *Reversed. All the Justices concur.*