Leon EPSTEIN, Distinctive Food and Entertainment Corp., Edward J. Curtin, and Earl George

v.

Lester G. MADDOX, Governor of the State of Georgia, General George Hearn, Adjutant General of the State of Georgia, Arthur Bolton, Attorney General of the State of Georgia, T. Ralph Grimes, Sheriff of Fulton County, Georgia, Herbert T. Jenkins, Chief of Police of the City of Atlanta, Lewis R. Slaton, Solicitor General of the Atlanta Judicial Circuit, and William E. Spence, Solicitor General of the Criminal Court of Fulton County.

Civ. A. No. 11131.

United States District Court
N. D. Georgia,
Atlanta Division.
Aug. 30, 1967.

of Atlanta, and the Solicitors General of the two state criminal courts located in Fulton County, seeking a temporary injunction and asking that a three-judge District Court be convened to have declared unconstitutional four Sunday closing (blue) laws of the State of Georgia respecting dancing and the sale of alcoholic beverages on the Sabbath. The laws in question are contained in Georgia Code §§ 26–6105, 58–1060, 58–1079, and 26–6914.[1] The basic contention is that these sections are violative of that portion of the First Amendment prohibiting the making of any law respecting the establishment of religion, which provision has been made applicable to the states by the Fourteenth Amendment.

The facts of the case, as shown by the evidence and the pleadings, are not in serious dispute in any controlling respect. The court finds them to be as follows: the plaintiffs, who sue for themselves and for others similarly situated, are either owners and/or employees of lounges or nightclubs licensed to serve mixed drinks under an ordinance of the City of Atlanta and pursuant to Georgia Code § 58–1083 authorizing such ordinances and such licenses on a local option basis. The same section of the Georgia Code also gives to cities and counties complying with the same "full power and authority to adopt all reasonable rules and regulations governing the qualifications and criteria for issuance of any such license and * * * power and authority to promulgate reasonable rules and regulations governing the conduct of any licensee * * *, including but not

Wesley R. Asinof, Atlanta, Ga., for plaintiffs.

Arthur K. Bolton, Atty. Gen., Lewis R. Slaton, Sol. Gen., Harold Sheats, County Atty., Henry L. Bowden, City Atty., William Spence, Sol. Gen. Crim., for defendants.

## ORDER

EDENFIELD, District Judge.

Plaintiff night club owners and employees filed this complaint against the Governor of Georgia, the Adjutant General of Georgia, the Attorney General of Georgia, the Sheriff of Fulton County, Georgia, the Chief of Police of the City

---

1. Georgia Code § 26–6105: "Any person who shall keep open a tippling house on the Sabbath day or Sabbath night shall be guilty of a misdemeanor."
Georgia Code § 58–1060: "Any person who shall sell or offer for sale any spirituous liquors as herein defined on Sundays or election days shall be guilty of a misdemeanor."
Georgia Code § 58–1079: "It shall be unlawful to sell any liquor in any of the counties specified by this Act between the hours of 12:00 o'clock, midnight, on Saturday night, until the hour of 12:00 o'clock, midnight, on Sunday night, at any time and at any time on election days. It is the purpose and intent of this section to prevent the sale of liquor on Sunday and election days, and any violation of same shall be a misdemeanor by the buyer and/or the seller."
Georgia Code § 26–6914: "Dancing at any public place on the Lord's day, commonly known as Sunday, is hereby prohibited. The owner, proprietor, manager, agent, lessee or tenant of any public place who shall permit dancing at said public place on the Lord's day, commonly known as Sunday, shall be guilty of a misdemeanor."

being limited to *the regulation of hours of business*, types of employees, and other matters which may fall within the police powers of such municipalities or counties." (Emphasis by the court.)

The defendants are the officers named in the first paragraph above, and paragraph 6 of the complaint alleges that all of them are state officials and that they are sued "in their official capacity, and their acts as hereinafter alleged in this complaint are under color of state law."

The first three statutes assailed (quoted in full in footnote 1 hereof) undertake to prohibit the sale of alcoholic beverages on Sunday; that is, from 12:00 o'clock midnight on Saturday night until 12:00 o'clock midnight on Sunday night. The mixed drink local option statute, on the other hand, or more precisely the ordinance of the City of Atlanta adopted pursuant thereto, expressly authorizes licensees thereunder to sell mixed drinks until 2:00 A.M. every day in the week, including Sundays. The other statute under attack, § 26–6914, prohibits dancing at any public place on the Lord's day and provides that any violation thereof shall be punished as for a misdemeanor. Dancing until 2:00 A.M. on Sundays has also been permitted at plaintiffs' establishments.

On or about August 5, 1967 the Governor of Georgia issued orders to the Revenue Commissioner of the state to conduct raids and arrest the operators of such licensed establishments and to seize liquors found on their premises in the event such establishments continued to sell mixed drinks between the hours of 12:00 midnight on Saturday and 2:00 A.M. on Sunday.

Thereupon, one of the plaintiffs here, along with others similarly situated, filed an action in state court naming as defendants the enforcement officers of Atlanta and Fulton County (but omitting state house officers), seeking to enjoin interference with their establishments, their contention being that the state statutes prohibiting the sale of alcoholic beverages on Sunday were inapplicable to them in view of the subsequent mixed drink statute and the ordinance of the City of Atlanta adopted pursuant thereto. (Defendants' Exhibit 5.) An ex parte restraining order was granted by the state court at the request of the plaintiffs in that suit, but neither the Governor nor the state house officers were named as defendants therein, and, deeming themselves not bound by the order, these officers proceeded, by the use of state revenue agents, members of the Georgia Bureau of Investigation, and members of the State Patrol, to raid one of plaintiffs' establishments between the hours of 12:00 o'clock midnight on Saturday, August 5th, and 2:00 A.M. on Sunday, August 6th, arresting one of the plaintiffs in charge and closing down the establishment. (Defendants' Exhibits 7, 8 and 9.) Still later, the state case came on to be heard on a general demurrer interposed by the defendants therein, and upon such hearing was dismissed on the merits. (Defendants' Exhibit 5.) The plaintiffs in that action did not raise, and the state court did not decide, any question raised here, viz.: whether the state statutes were in violation of the "establishment" clause of the First Amendment. This action has not been appealed to the appellate courts of Georgia, but the time for such appeal has not expired.

The evidence shows that the hours between 12:00 o'clock midnight on Saturday night and 2:00 A.M. on Sunday morning are the two most profitable hours in plaintiffs' business, and if they are deprived of the revenue produced during such period, the profitable character of the business will be seriously impaired, if not destroyed. (Testimony of witnesses Curtin and Epstein.)

The complaint seeks an injunction and a declaratory judgment that the statutes in question are unconstitutional insofar as they attempt to prohibit the sale of alcoholic beverages and dancing between the hours of 12:00 o'clock midnight on Saturday and 2:00 A.M. on Sunday, and that, properly construed, the mixed drink statute (58–1083) gives them the right to sell such drinks irrespective of the Sunday closing laws. It also seeks ac-

tual damages of $5,000 and punitive damages of $200,000 against the Governor of Georgia.

■ Based on these facts, the court has arrived at some conclusions of law in the case, the controlling ones being (a) that irrespective of whether the Georgia Sunday laws are wise or "archaic"[2], they are not unconstitutional as violating the establishment clause of the First Amendment, and (b) that no such substantial federal question is presented as to require the convening of a three-judge court. These and other issues raised in the complaint will be discussed in the opinion.

The validity of Sunday closing laws under the First Amendment was rather exhaustively considered in four separate decisions by the Supreme Court of the United States in 1961 and all handed down on the same day.[3] In each case their validity was upheld. Conceding their religious origin, the court concluded that this motive had now become subordinate to the need for a national day of rest and that they were now justified as a valid exercise of the police power. Georgia courts had arrived at the same conclusion as to the character of Georgia's Sunday laws as early as 1871. Thus, in Karwisch v. Mayor and Council of Atlanta, 44 Ga. 205, 208, Chief Justice Lochrane observed:

"We do not think that the ordinance against dealers keeping open doors on Sunday can be regarded as affecting

conscience or enforcing any religious observance. The law fixes the day recognized as the Sabbath day all over Christendom, and that day, by Devine injunction, is to be kept holy—'on it thou shalt do no work.' The Christian Sabbath is a civil institution, older than our government, and respected as a day of rest by our Constitution, and the regulation of its observance as a civil institution has always been considered to be, and is, within the power of the Legislature as much as any regulations and laws, having for their object the preservation of good morals and the peace and good order of society."

See also Hennington v. State, 90 Ga. 396, 398, 17 S.E. 1009, 1010 where Chief Justice Bleckley said:

"With respect to the selection of the particular day in each week which has been set apart by our statute as the rest day of the people, religious views and feelings may have had a controlling influence. We doubt not they did have, and it is probable that the same views and feelings had a very powerful influence in dictating the policy of setting apart any day whatever as a day of enforced rest. But neither of these considerations is destructive of the police nature and character of the statute. If good and sufficient police reasons underlie it, and substantial police purposes are involved in its provisions, these reasons and purposes constitute its civil and legal justifica-

---

2. In the evidence adduced, the Governor of Georgia was quoted as saying, subsequent to the raid complained of, that he considered the dancing statute to be "archaic" and that he had no intention of enforcing it in the future. In apparent reliance on this assertion the plaintiffs, since the raid, have continued to operate their establishments until 2:00 A.M. on Sunday mornings "for dancing only", and no cases have been made, and none are now pending, against them for so doing. It also appears that the one case which was made under the dancing statute was dismissed by a Judge of the Police Court of the City of Atlanta on the ground that the dancing statute was unconstitutionally vague and indefinite.

These facts alone would seem to justify this court in declining to pass upon the validity of the dancing statute and in declining to issue a temporary injunction in connection therewith. See Two Guys from Harrison-Allentown v. McGinley, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (Section I of the opinion).

3. McGowan v. State of Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393.
Gallagher v. Crown Kosher Super Market, 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed. 2d 536.
Two Guys from Harrison-Allentown v. McGinley, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551.
Braunfeld v. Brown, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563.

tion, whether they were or not the direct and immediate motives which induced its passage, and have for so long a time kept it in force."

See also Rogers v. The State, 60 Ga. App. 722, 724, 4 S.E.2d 918.

■ Of course, these Georgia cases are not controlling on the constitutional question, but they are relevant to such question as establishing the history and purpose of such legislation in Georgia. See Two Guys from Harrison-Allentown v. McGinley, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (Section III of the opinion).

Plaintiffs concede these holdings by the Supreme Court of the United States but seek to distinguish them by relying on the concluding words in the majority opinion in McGowan v. State of Maryland, supra, where Chief Justice Warren said:

"We do not hold that Sunday legislation may not be a violation of the 'Establishment' Clause *if it can be demonstrated that its purpose—evidenced either on the face of the legislation, in conjunction with its legislative history, or in its operative effect—is to use the State's coercive power to aid religion.*" (Emphasis by the court.)

■ Suffice it to say that, in the opinion of this court, the proof here does not meet this test. Neither on its face nor in its effect nor by its history does this legislation coercively aid a particular religion. The mere fact that a police regulation parallels some religious commandment does not make it invalid as a religious enactment. Otherwise, no state could punish murder.

Plaintiffs also claim (as a basis for the actual damages sought against the Governor) that in the course of the raid

the state officers illegally seized an inventory of liquor which was in storage and which was not being sold. They also ask that the court construe the mixed drink law (Georgia Code § 58–1083) as superseding or impliedly repealing [4] the Sunday "bone dry" statutes. While we shall separately discuss these allegations, we conclude that they raise questions which should more properly be addressed to the state courts.

■ Going first to the claim for damages, it will be observed that the complaint alleges that the state officers, including the Governor, are being sued "in their official capacity". So construed, the complaint would seem to run into an insurmountable obstacle in the form of the Eleventh Amendment preventing suits against the state in federal court. Governor of Georgia v. Madrazo, 26 U.S. 110, 1 Pet. 110, 7 L.Ed. 73; In re Ayres, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216. On the other hand, if the complaint be construed as alleging that the Governor's acts were completely illegal and beyond his authority, then he would be liable in state court as any other private citizen and there would be no need for the exercise of federal jurisdiction. See Cannon v. Montgomery, 184 Ga. 588, 591–592, 192 S.E. 206; Florida State Hospital v. Durham Iron Co., 194 Ga. 350, 353, 21 S.E.2d 216. In fact the evidence shows that plaintiffs have already filed a reclamation petition with the State Revenue Commissioner for the return of their inventory and that a hearing has been set thereon for August 31, 1967. (Defendants' Exhibit 3.) If they do not thereby effect a recovery of their merchandise, no reason appears why plaintiffs cannot obtain complete relief by appealing his ruling through the state courts.[5] In short, and assuming the sei-

---

4. What plaintiffs really contend is that the "bone dry" statutes relate only to package goods, whereas § 58–1083 relates to mixed drinks and that the two items involve entirely different commodities so that no implied repeal is necessary. We don't see how plaintiffs can support this distinction inasmuch as one of the bone dry statutes relates to "tip-

pling houses" which are defined in Georgia law as being places "where intoxicating drinks are sold in drams of small quantities to be drunk on the premises." See Mohrman v. The State, 105 Ga. 709, 714, 32 S.E. 143, 43 L.R.A. 398.

5. See Georgia Code §§ 92–8426.4, 92–8446, and Georgia Code §§ 3A–113 and 3A–120.

zure of plaintiffs' property raises a constitutional question, such question may be rendered moot by the decision of the Revenue Commissioner. This "special circumstance" would seem to authorize, if not require, this court to abstain from exercising its jurisdiction. See Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377; Propper v. Clark, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480. And see the three judge opinion in Coon v. Tingle, 277 F.Supp. 304, No. 10531 in this court, decided June 19, 1967, and cases cited.

■■ On the doctrine of abstention we also decline to construe the Georgia statutes to determine whether the "bone dry" laws were impliedly repealed by, or are inapplicable to, the mixed drink Act. As shown by the statement of facts, this question is likewise now pending in the state courts, and no reason appears why the state appellate courts should not be accorded their prerogative of construing these statutes before this court undertakes to do so. Such construction may give plaintiffs complete relief. It is true that plaintiffs claim that under the doctrine of separation of powers the Governor is beyond the reach of the state courts, even if their adjudication is in plaintiffs' favor. We are not sure this is correct; but whether it is or not, nothing has been shown to indicate that the Governor would ignore a final decision of the Georgia courts, and if such were shown, the doctrine of abstention would then no longer apply and plaintiffs could at that time seek and obtain relief here. See Miller v. Rivers, Governor, 31 F.Supp. 540 (M.D.Ga.1940).

■ Finally, and by amendment, plaintiffs charged discrimination under the due process and equal protection clauses of the Fourteenth Amendment on the ground that the defendants singled them out to be raided and prosecuted while some 160 other establishments holding similar licenses and performing similar acts were left undisturbed. In passing, we remark that plaintiffs' case started out as a class action on behalf of all such licensees, which would appear to make this amendment somewhat inconsistent. But irrespective of this, neither the allegation of the amended complaint nor the evidence offered support plaintiffs' contention. Admittedly, a consistent or protracted or collusive practice of discriminatory law enforcement may sometimes raise a genuine and justiciable constitutional question. See Zayre v. City of Atlanta, 276 F.Supp. 892, No. 10106 in this court (decided March 1, 1967), which involved these same Sunday laws. But the systematic and repeated acts of discrimination shown in that case do not appear here. On the contrary, plaintiffs' own evidence shows that here the Governor publicly announced his intention to enforce the Sunday laws against *all* such licensees. According to the evidence, other licensees were notified of the Governor's intentions, and of those notified, all but three voluntarily agreed to comply. There is also evidence that he undertook the enforcement of the laws in other areas of the state. (Plaintiffs' Exhibit 2.) It thus appearing that the Governor's indiscriminate purpose was to enforce the laws against all licensees, he manifestly had to start somewhere, and plaintiffs cannot complain that he started with them. By this we do not hold that the Governor was necessarily pursuing the correct remedy against licensees in general. Ordinarily, and in the absence of statute, the remedy for a misdemeanor violation is by suing out a warrant to be followed by indictment or information, not by raiding or closing an otherwise legitimate place of business. The Governor may have had such authority. We do not decide. All we do decide is that the record shows no plan or scheme or effort or intention to discriminate against these particular plaintiffs as distinguished from others of the same class, and in the absence of such scheme, one violator of the law cannot complain that another, who may be equally guilty, has not been prosecuted.

■ Having found that the Georgia Sunday laws were clearly constitutional, the court has had no occasion to consider the principle of law that ordinarily a

federal court should not interfere with a state's enforcement of its criminal laws. Otherwise, that rule might itself have been sufficient to justify the denial of a temporary injunction. Certainly it justifies our conclusion not to inquire whether the defendants were pursuing the proper remedy. See Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1962), Pugach v. Dollinger, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678 (1961); cf. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22; Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951); Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); and see the three judge opinion in Coon v. Tingle, 277 F.Supp. 304, No. 10531 in this court, decided on June 19, 1967.

It may be that the conclusions herein reached will ultimately require dismissal of the entire complaint as failing to raise a substantial federal question. See Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152. In fact a motion seeking such relief has already been filed by defendants. The parties, however, have not been fully heard on this question, and the complexion of the case could change.

In the meantime, the application for a temporary injunction and the motion that this court request that a three-judge court be convened are both denied.